**Richard BROCKMAN, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.**

No. 92–2333.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1992.

Decided March 10, 1993.

---

James P. Cavanaugh, Omaha, NE, argued, for appellant.

Daniel Alan Morris, Asst. U.S. Atty., Omaha, NE, argued, for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Richard Brockman appeals the judgment of the district court[1] affirming the decision of the Secretary of Health and Human Services (Secretary) to deny him disability benefits under Title XVI, the Supplemental Security Income Program (SSI), of the Social Security Act. On appeal, Brockman asserts that the Administrative Law Judge (ALJ) erred in discrediting his subjective complaints of pain and in failing to develop the record regarding his alleged mental impairment. We affirm.

I.

On March 22, 1988, Brockman applied for SSI disability benefits.[2] Brockman listed

1. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

2. Brockman also applied for benefits under Title II of the Social Security Act on October 27, 1989. At Brockman's request, the ALJ treated this application as a request to reopen his prior 1986 and 1987 applications for Title II disability benefits. The ALJ denied the request to reopen and considered only Brockman's application for SSI benefits. The district court, finding that the denial of the request to reopen the prior applications was a matter within the Secretary's discretion and therefore not subject to judicial review, did not consider Brockman's Title II application. Brockman does not appeal this portion of the district court's decision.

his impairment as involving his "eyes, legs [and] hips" and identified March 1, 1988, as the date the impairment began. At the hearing before the ALJ, Brockman testified that he suffered from intermittent pain in his legs and back, experienced swelling in his legs, and had difficulty with his vision.

The Social Security Act defines a "disability" as an "unable to engage in any substantial gainful activity by reason of any medically determinative physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Based on the evidence presented at the hearing, the ALJ found that Brockman suffered severe impairments in the form of post-traumatic arthritis of the left ankle and low back discomfort. The ALJ also found that due to these impairments, Brockman was unable to return to his previous job as a sanitary engineer.

After the ALJ found that Brockman could not return to his past relevant work, the burden properly shifted to the Secretary to prove that Brockman had the residual functional capacity (RFC) to perform other work in the national economy. *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (citations omitted). Taking into consideration Brockman's age, education, and past relevant work activity, the ALJ used the medical-vocational guidelines, commonly referred to as the "grids," to determine that Brockman had the RFC to perform the full range of sedentary labor. As a result, the ALJ concluded that Brockman was not disabled and denied him SSI disability benefits. The Appeals Council denied Brockman's request for review of this decision. Brockman sought judicial review and the district court affirmed the decision of the Secretary. This appeal followed.

## II.

When reviewing a denial of benefits, this court must affirm the Secretary's decision if it is supported by substantial evidence in the record as a whole. *Murphy v. Sullivan*, 953 F.2d 383, 384 (8th Cir.

1992). We must take into account the entire administrative record and give consideration to evidence that both supports and detracts from the ALJ's findings. *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991). Nevertheless, we "may not substitute [our] judgment for that of the Secretary simply because [we] might disagree or find[ ] the claimant's proof more credible." *Jelinek v. Bowen*, 870 F.2d 457, 458 (8th Cir.1989). Using these standards, we now review Brockman's appeal.

## III.

Brockman asserts that the ALJ improperly discredited his subjective complaints of pain and therefore erred when he relied solely on the grids to determine whether he was disabled for the purpose of eligibility for SSI benefits. *See Thompson v. Bowen*, 850 F.2d 346, 350 (8th Cir.1988) ("If [the claimant's] nonexertional impairments significantly affect [his or] her residual functional capacity then the Guidelines are not controlling and may not be used to direct a conclusion of disabled or not disabled."). Pursuant to the standard enunciated in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984) (subsequent history omitted), an ALJ may not discount a claimant's subjective complaints of pain solely for the reason that no objective medical evidence supports its existence. Rather, in addition, the ALJ must consider the claimant's work record as well as observations by third parties and treating physicians relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) any aggravating factors; (4) dosage, effectiveness, and side effects of any medication; and (5) functional restrictions. *Id.* at 1322. An ALJ, nevertheless, is justified in discounting a claimant's subjective complaints if "there are inconsistencies in the record as a whole." *Id.* In this case, the ALJ recognized his obligations under the *Polaski* standard, carefully evaluated the evidence Brockman presented, and concluded that Brockman's complaints lacked credibility.

At the hearing, Brockman testified that he performed some household chores, did

all of his cooking, went grocery shopping, and participated in an occasional social outing, suggesting a level of activity uncharacteristic of a person unable to engage in any type of gainful employment. Brockman also testified that the pain itself was intermittent and did not occur every day. *See, e.g.*, Appellate Record (App.) at 68 ("Some days it bothers me and some days it don't [sic]."). According to Brockman, the severity of his pain depends upon such circumstances as weather conditions, how long he has been walking, standing, or sitting, and whether he is stooping over. *See Pickner v. Sullivan*, 985 F.2d 401, 404 (8th Cir. 1993) (ALJ discredited claimant's subjective complaints of pain in part because of "her relatively normal daily functions and social activities."). In reference to Brockman's prior work record, the ALJ termed it "rather spotty." The ALJ also considered the medical evidence, but because Brockman was not currently seeing a physician on a regular basis, the most recent medical report available was from 1988. In April of that year, Dr. Donald Bendorf examined Brockman and concluded that Brockman had post-traumatic arthritis of the left ankle and intermittent low back pain. Dr. Bendorf gave the opinion, however, that Brockman had no limitations in movement or in his muscle and sensory abilities. The ALJ noted that Brockman had not taken medication for his alleged pain and discomfort for over two years.

The ALJ also carefully considered the evidence Brockman introduced from his third party witness. Richard Barber, the man with whom Brockman lives, testified in Brockman's behalf. Due to the suspect nature of Barber's testimony concerning Brockman's alleged pain and discomfort, however, the ALJ gave it little to no weight in his final determination. *See Basinger v. Heckler*, 725 F.2d 1166, 1170 (8th Cir.1984) (ALJ is free to disbelieve the testimony of the claimant and his witnesses).

Brockman nevertheless argues that the ALJ erred in failing to consider the observations of Dr. Anthony Pantano, Brockman's treating physician, concerning his functional restrictions. Between October 1985 and April 1986, Brockman sought treatment from Dr. Pantano on five different occasions, complaining of pain in his back and numbness in his leg. After the last of these visits, Dr. Pantano offered the opinion that Brockman will suffer a permanent disability of approximately 5% of his body as a result of his complaints. We note that Brockman claims his disability began on March 1, 1988, approximately two years after the last of these visits, calling into question the relevancy of Dr. Pantano's report to Brockman's current application for SSI disability benefits. Furthermore, Brockman has given no indication that the assessment of a 5% disability to Brockman's body as a whole is not simply the equivalent of the ALJ's finding of a severe impairment. The ALJ did not find that Brockman suffered *no* pain and discomfort; rather he found that Brockman's impairments did not prevent him from performing the full range of sedentary work. Given the record as a whole, the ALJ did not err when he declined to consider a two-year-old medical report of a treating physician who offered an opinion not necessarily in conflict with the ALJ's conclusion.

After hearing all the evidence, the ALJ concluded that any intermittent pain and discomfort Brockman may experience in conjunction with his impairments do not significantly affect his ability to perform the full range of sedentary labor. The ALJ complied with the requirements in *Polaski* for assessing Brockman's subjective complaints of pain, and he pointed out inconsistencies in the record, made express credibility determinations, and evaluated the evidence presented. *See Robinson v. Sullivan*, 956 F.2d 836, 839 (8th Cir.1992) ("[T]he ALJ must make express credibility determinations and set forth on the record inconsistencies that lead" the ALJ to discredit the claimant's subjective complaints of pain.). After a thorough review of the record, we hold that the ALJ did not err in discrediting Brockman's subjective complaints of pain and, as a result, did not err in relying solely on the grids to determine whether Brockman had the RFC to per-

**1348**

form the full range of activities in the category of sedentary work.[3]

## IV.

■ Brockman also asserts that the ALJ erred in finding that his alleged diagnosis of schizophrenia did not diminish his RFC. When Brockman filed for SSI disability benefits, however, he did not allege a disability based on schizophrenia. Moreover, no one testified at the hearing regarding this specific impairment. The only medical evidence presented to support this theory was a ten-year-old diagnosis from Dr. Ronald Bendorf. Brockman relies on a letter in the record from Dr. Bendorf to the Disability Determinations Center in Des Moines, dated September 15, 1981. In that letter, Dr. Bendorf wrote that Brockman showed a progressive deterioration in social and interpersonal skills and an incapacity to maintain any meaningful employment. He also wrote "Simple schizophrenia" in the "Diagnostic Impression" blank.

At the hearing, Brockman offered no evidence concerning any current mental impairments, and he testified that Dr. Bendorf gave him no indication that he believed Brockman suffered any psychological problems. Moreover, Brockman was examined again in 1986 by a psychologist, Dr. Fabry, at the request of another Disabilities Determinations Examiner. Dr. Fabry observed that Brockman had no difficulty expressing himself and that "[h]e did not demonstrate any bizarre behavior." At most, Dr. Fabry concluded that Brockman was "an individual who is somewhat bewildered." The only testimony tangentially related to a disability based on a mental impairment was that at times Brockman had trouble concentrating on details and that his IQ was below average.[4] The ALJ's decision that Brockman's "remote

history of emotional illness" and apparent low average intelligence did not diminish his capacity to perform the full range of sedentary labor is supported by substantial evidence.

■ Brockman argues that even if he did not present sufficient evidence to establish a mental impairment, the ALJ nevertheless had the duty to develop the record on his schizophrenia claim. The ALJ, however, had no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability. *See Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir.1989) (where claimant did not allege disability due to mental impairment and presented only minimal evidence of anxiety, ALJ did not err when he failed to order consultative examination before concluding claimant had no mental impairment). The ALJ simply found insufficient evidence had been introduced to suggest that Brockman suffered from significant mental disturbances during the time period at issue for the current application of benefits. Due to the paucity of evidence presented by Brockman, the district court did not err in concluding that Brockman failed to meet his burden of establishing a claim based on schizophrenia. *See id.* at 425.

## V.

In summary, we hold that the Secretary's decision to deny Brockman SSI disability benefits is supported by substantial evidence. Accordingly, we affirm the judgment of the district court.

---

3. We note that the ALJ did question a vocational expert and present a hypothetical question describing an individual who could sometimes sit for an extended period of time, lift up to ten pounds occasionally, and mentally perform simple unskilled work. The ALJ then placed the following limitations on the type of work this individual could perform: significant isolation from the public and coworkers, limited interaction with others, and no stooping or bending.

Given this hypothetical, the vocational expert testified that there are jobs in the economy, although limited in number, that meet these requirements and that the individual could perform.

4. As discussed, the ALJ did not err when he discredited testimony of Richard Barber concerning Brockman's behavior at home.