# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1229

_____

James Cantrell,           *
                                      *

         Appellant,        *    Appeal from the United States
                                      *    District Court for the
   v.                           *    Eastern District of Arkansas
                                      *

Kenneth S. Apfel, Commissioner,    *
Social Security Administration,      *    [PUBLISHED]
                                      *

         Appellee.         *

_____

Submitted: September 13, 2000

Filed: November 7, 2000

_____

Before WOLLMAN, Chief Judge, BRIGHT, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

James Cantrell sought disability benefits for a mental impairment. The Commissioner denied benefits through all levels of review; Cantrell then pursued judicial review of the Commissioner's determination in district court.[1] See 42 U.S.C. § 405(g). We must decide whether the administrative law judge properly credited the

_____

[1] By consent of the parties, the dispute was presented to United States Magistrate Judge H. David Young, United States District Court for the Eastern District of Arkansas. See 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73.

opinions of two agency-funded one-time consultants instead of the contrary opinion of Cantrell's own treating physician. We affirm.

## BACKGROUND

Cantrell has been treated for multiple psychological problems. In the last fifteen years, Cantrell's doctors have diagnosed him with a variety of mental impairments — depression, anxiety, slight hysteria, dysphoria, antisocial tendencies, and possibly schizoid, pre-psychotic tendencies. During the mid- to late-1990s, Cantrell received treatment at the George W. Jackson Community Mental Health Center in Jonesboro, Arkansas. Cantrell's primary treating physician was Mark Baltz, M.D., a psychiatrist. Dr. Baltz struggled to medicate Cantrell properly for almost four years. Cantrell responded poorly to many different anti-depressant drugs, and he neglected to follow doctors' orders some of the time. During Cantrell's treatment at the Jackson Center, he was prescribed a veritable pharmacy of anti-depressants and other medications.

In his November 6, 1995 application for disability benefits, Cantrell claimed that his mental impairments prevented him from working. Cantrell's work history reflects numerous manual labor jobs. He performed farm and construction work; he cut fiberglass sheets in a factory; and, for a short time, he worked as a janitor at Arkansas State University. Although he stayed in school until the eighth grade, Cantrell reads at a third grade level and he cannot write.

Cantrell was examined by several mental health professionals in connection with his benefits application. The administrative law judge (ALJ) who reviewed Cantrell's application relied on the opinions of three professionals to determine whether Cantrell's mental impairments prevented him from working, and therefore amounted to a "disability" under SSA regulations.

On January 5, 1996, Michael Inman, Ph.D., a psychologist, examined Cantrell. Dr. Inman took a thorough medical history of Cantrell, and subjected Cantrell to a barrage of mental tests. Dr. Inman's report details several apparent inconsistencies between Cantrell's observed behavior and his test scores. Dr. Inman found that certain aspects of Cantrell's description of himself seemed unworthy of credence.[2]

In his report, Dr. Inman concluded that Cantrell had "not put forth his best effort," and had "appeared to attempt to lower test results deliberately." Although Dr. Inman acknowledged Cantrell's history of depression, Dr. Inman reasoned that Cantrell was now "malingering." Dr. Inman wrote that Cantrell "has average ability to understand, remember, and carry out instructions." Dr. Inman ultimately concluded that Cantrell could work in an appropriate environment.

On March 13, 1997, Dr. Baltz (the treating physician) examined Cantrell to prepare a report pertaining to his work-related abilities. Dr. Baltz found that Cantrell had a "satisfactory" ability to groom himself and to maintain socially appropriate behavior. In other respects, however, Dr. Baltz determined that Cantrell's work-related abilities were merely "fair," which means "seriously limited, but not precluded." Dr. Baltz finally concluded that Cantrell had no useful ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms."

On June 2, 1997, Stephen Harris, Ph.D., a psychologist, evaluated Cantrell's ability to work. Dr. Harris was uncertain whether Cantrell had depression; he diagnosed Cantrell with a more "generalized anxiety disorder." Dr. Harris concluded that Cantrell could work in a job that required fairly simple, repetitive tasks. Dr. Harris

---

[2]Dr. Inman noted, for example, that Cantrell had driven by his office the day prior to the examination in order to learn the proper route. Yet, later in the examination, Cantrell claimed that one of his principal mental defects was his inability "to remember things."

admitted, however, that Cantrell might need some assistance at times, even when performing relatively straightforward tasks. Dr. Harris scored Cantrell's work-related abilities similarly to Dr. Baltz. Dr. Harris wrote that Cantrell's ability to function independently, maintain concentration, and carry out complex job instructions was "fair," the same rating given by Dr. Baltz. Dr. Harris did not go as far as Dr. Baltz, who ultimately concluded that Cantrell had *no* useful ability to work.

The ALJ heard testimony from both Cantrell and his wife. Cantrell's attorney also entered several exhibits (mainly Cantrell's medical records from the Jackson Center) into the record. The ALJ issued a written order denying Cantrell disability benefits on September 25, 1997. The ALJ found that Cantrell was not disabled because he was capable of returning to work at some of his former jobs that required simple, menial tasks and little interaction with the public or coworkers. The ALJ compared the reports of Dr. Baltz and Drs. Inman and Harris, and concluded that Cantrell could resume his past work. The ALJ agreed largely with Dr. Harris, and discredited Dr. Baltz's contrary conclusions. In sum, the ALJ found that Cantrell

> has limitations from his mental condition that significant [sic] limit him, however, the examinations and opinions of his doctors indicated that he has the ability to do simple tasks, that do no [sic] involve significant contact with the public.

After the ALJ's decision became the final decision of the Commissioner, Cantrell sought review in federal district court. The district court upheld the Commissioner's ruling, and this appeal followed.

## DISCUSSION

By statute, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "In

assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. We may not reverse the Commissioner merely because substantial evidence exists supporting a different outcome." Black v. Apfel, 143 F.3d 383, 385 (8th Cir. 1998) (quotations, punctuation and citations omitted).

The only issue presented in this appeal is whether Cantrell should be deemed "disabled" for purposes of the Social Security Act. The Act provides for payment of benefits to persons who suffer from mental disabilities. See 42 U.S.C. § 423(a)(1)(D). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).

Our analysis follows the familiar five-step test. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). In Cantrell's case, the ALJ denied benefits based upon the fourth step — whether, despite his infirmities, a claimant can perform his own past work. The ALJ credited the opinions of Drs. Inman and Harris (and partially discredited Dr. Baltz's opinion), and determined that Cantrell could return to work at his past jobs that required simple work and little social interaction.

When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions. See Bentley v. Shalala, 52 F.3d 784, 785-86 (8th Cir. 1995); Cabrnoch v. Bowen, 881 F.2d 561, 564 (8th Cir. 1989). As a general matter, "the report of a consulting physician who examined [a] claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." Lanning v. Heckler, 777 F.2d 1316, 1318 (8th Cir. 1985) (quoting Hancock v. Secretary of Dept. of Health, Educ. and Welfare, 603 F.2d 739, 740 (8th Cir. 1979)). But we have noted two exceptions to this general rule.

> [W]e have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician [1] where other medical assessments "are supported by better or more thorough medical evidence," Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997), or [2] where a treating physician renders inconsistent opinions that undermine the credibility of such opinions, see Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996).

Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000).

We conclude that this case falls within the first exception. Dr. Inman's and Dr. Harris's evaluations of Cantrell were far more thorough than Dr. Baltz's examination. Both Drs. Inman and Harris spent considerable time evaluating Cantrell, as evidenced by their thorough testing regimens and reports. Dr. Inman subjected Cantrell to a battery of psychological and mental tests. Dr. Inman also took the time to record a complete medical history of Cantrell. In contrast, Dr. Baltz's report consists of two pages of checked boxes devoid of illuminating examples, descriptions, or conclusions. Because Drs. Inman and Harris prepared more thorough reports than Dr. Baltz, the ALJ properly exercised his discretion to favor their opinions. See Prosch, 201 F.3d at 1013-14; Ward v. Heckler, 786 F.2d 844, 846-47 (8th Cir. 1986) (per curiam) (holding that a treating physician's conclusory opinions warranted less deference than the "detailed and thorough" reports of two consulting physicians).

Cantrell argues that *all* of the professional opinions in this case are consistent, and that each opinion suggests that he is disabled. He notes that each examiner (Baltz, Harris and Inman) rated his vocational abilities mostly in the "fair" category. Cantrell ventures that a rating of "fair" is tantamount to an opinion of outright disability. See Cruze v. United States Dept. of Health & Human Serv., 49 F.3d 614, 618 (10th Cir. 1995). In Cruse, the Tenth Circuit defined a physician's rating of "fair" to be evidence of disability, rather than ability. See id.

The word "fair" is both a measure of ability and disability. It is on the balance between poor ability to function and greater ability to function. A physician's use of the term "fair" does not, on its own, declare that the claimant cannot return to past work. Rather, the term "fair" requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability. Here, the ALJ could determine that the functional ability Cantrell had, considering his mental impairments and his previous menial work experience, established that he could return to the limited type of work he had been performing.

Substantial evidence supports the Commissioner's decision to deny Cantrell disability benefits for a mental impairment. We affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.