# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4119

_____

|  |  |  |
|---|---|---|
| Paul Anderson, Jr., | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Southern District of Iowa. |
| | * | |
| Jo Anne B. Barnhart, Commissioner | * | |
| of Social Security, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 14, 2003

Filed: September 29, 2003

_____

Before BOWMAN, HEANEY, and BYE, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Paul Anderson, Jr., appeals the decision of the District Court[1] affirming the Administrative Law Judge's (ALJ) denial of his application for disability insurance benefits and supplemental security income benefits. Because this decision is supported by substantial evidence, we affirm.

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

Anderson was forty-three years old at the time of the ALJ's decision and had completed two years of community college. Anderson is 5'10" tall and weighs 270 pounds. He has previously been employed as a warehouse worker, child care worker, pattern cutter, upholsterer, home health aid, and baker, but he has not engaged in substantial gainful activity since the fall of 1999. Anderson has degenerative disc disease and suffers severe impairment in his right shoulder. He has also been diagnosed for mild depression and morbid obesity. On September 2, 1998, Anderson filed his applications for benefits, alleging that he has been unable to work since March 12, 1997, because of back problems, a shoulder injury, a hand injury, aches and pains, and depression. His applications were denied initially and on reconsideration. Subsequently, he requested a hearing before an ALJ at which he testified about his impairments. A vocational expert also testified during the hearing and responded to the ALJ's hypothetical questions about a person with Anderson's profile and whether a person with such impairments could perform other work in the national economy. Following the hearing, the ALJ denied Anderson's request for benefits, concluding that although Anderson had severe degenerative disc disease and was unable to perform his past relevant work, he was not disabled and retained the residual functional capacity to perform other work. Social Security Administration (SSA) Decision at 11–12 (Apr. 14, 2000). The Appeals Council of the Social Security Administration and the District Court affirmed the ALJ's decision. On appeal, Anderson argues that the ALJ improperly discounted his treating physicians' opinions and his complaints of pain and functional limitations.

We must affirm the ALJ's decision "if the record contains substantial evidence to support it." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). "Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision." Id. We consider evidence that both supports and detracts from the ALJ's decision, but "we cannot reverse the decision merely because there exists substantial evidence supporting a different outcome." Id. "Rather, if, after reviewing the record, we find that it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted).

To receive disability benefits, Anderson must demonstrate that he has a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2000). In making this determination, the ALJ employs the familiar five-step sequential test laid out in the social security regulations: (1) whether Anderson has engaged in substantial gainful activity since filing his claim; (2) whether his physical and/or mental impairments are severe; (3) whether his impairments are of listing-level severity; (4) whether his impairments prevent him from doing past relevant work; and (5) whether Anderson is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520(a)–(f) (2003). Both sides agree that the key issue in this appeal concerns the ALJ's analysis in the fifth step, i.e., whether the ALJ erred in determining that Anderson, despite his impairments, could perform other work in the national economy and was therefore not legally disabled.

As noted, the ALJ found that Anderson had severe degenerative disc disease and impairment of his right shoulder but concluded that he still retained the residual functional capacity to perform other work. The ALJ did not find Anderson's testimony regarding the intensity and severity of his impairments to be credible. Further, the ALJ found that Anderson had the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently and that he could do work at shoulder or chest level but could not perform overhead work with his right arm. In addition, the ALJ determined that there were no restrictions on Anderson's lower extremities and that he could sit, stand, or walk for eight hours a day with normal breaks. In light of those restrictions, the ALJ concluded that although Anderson could not perform his past relevant work, he could still perform other jobs in the

national economy, including telephone solicitor, gate tender, and general clerk as well as other unskilled light and sedentary positions. SSA Decision at 12.

Anderson first argues that the ALJ improperly discounted the statements of his treating physicians. In particular, he argues the ALJ gave controlling weight to the "one time examining opinion" of Dr. James D. Brokke, a consulting physician, instead of Dr. K.A. Garber, his family doctor (and Dr. Brokke's associate), and Dr. Kirk D. Green, a specialist in orthopedic surgery. Br. of Appellant at 18–19. As we have observed, "The opinion of a consulting physician who examines a claimant once . . . does not generally constitute substantial evidence." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). Nonetheless, there are two exceptions to this general rule. Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000). Specifically, we will uphold the ALJ's decision to credit a one-time consultant and discount a treating physician's opinion "(1) where [the one-time] medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. (internal citations and quotations omitted).

Here, the ALJ gave "little weight" to Dr. Garber's opinion "because of its internal inconsistencies." SSA Decision at 9. In support of this conclusion, the ALJ noted that Dr. Garber's statement concerning Anderson's need to take a break every forty-five minutes was inconsistent with his statement that Anderson had an unimpaired ability to walk. See Residual Functional Capacity Questionnaire from Dr. Garber (R.F.C.Q.) at 3 (undated) [Record at 289]. In addition, the ALJ did not credit Dr. Garber's opinion because Dr. Garber stated Anderson had physical impairments but failed to note any limitations regarding Anderson's ability to lift and carry and to stand and walk. See id. [Record at 290]. Finally, the ALJ stated that "Dr. Garber modified his answers" concerning Anderson's restrictions after a discussion with Anderson's attorney. SSA Decision at 9. Anderson disputes these findings. He contends that there was nothing inconsistent about Dr. Garber's statement that he had

an unimpaired ability to walk because that opinion was unrelated to Anderson's need to take forty-five minute breaks. In addition, Anderson disputes the ALJ's finding that Dr. Garber altered his opinion at the request of Anderson's counsel, claiming that Dr. Garber merely provided a correction letter concerning his earlier assessment of "no limitation" on Anderson's ability to lift and carry. See Letter from Dr. Garber to Mr. Richard Sturgeon at the Carter Law Firm (Feb. 2, 2000) [Record at 294]. Notably, Dr. Garber also provided no explanation for his assessment that Anderson, in addition to needing to take forty-five minute breaks, would need to be absent more than three times per month. See R.F.C.Q. at 2,6. [Record at 293].

Based on our review of the record, we conclude that the ALJ properly credited Dr. Brokke's opinion over Dr. Garber's assessment of Anderson. After examining Anderson at the request of Iowa's Disability Determination Services Bureau, Dr. Brokke opined that Anderson was limited to lifting twenty pounds, that he could lift ten pounds repetitively, and that Anderson was not limited in standing, moving, walking, or sitting in an eight-hour work day. Letter from Dr. Brokke to Ms. Jill Hunt (Oct. 22, 1998) [Record at 247-48]. While Dr. Brokke did not have the same treating relationship that Dr. Garber had with Anderson, his opinion was not tainted with the apparent inconsistencies of Dr. Garber's assessment. See Cruze v. Chater, 85 F.3d 1320, 1324–25 (8th Cir. 1996) (noting ALJ did not err in failing to credit treating physician's opinion because those opinions were inconsistent and not fully supported by medical evidence).[2]

---

[2]Despite a suggestion made during oral argument, the critical issue in this case is not whether the ALJ erred in failing to ask the vocational expert if someone with Anderson's profile would be considered disabled if that person, per Dr. Garber's assessment of Anderson, needed to take a break every forty-five minutes and needed to be absent from work three days a month. The ALJ did not pose this question to the vocational expert because she did not credit the opinion of Dr. Garber.

Anderson also argues that the ALJ improperly discounted the opinions of Dr. Green and Dr. Robert C. Jones. Beginning in May 1997, Dr. Green began to treat Anderson for pain in his right shoulder. The treatment culminated in February 1998 when Anderson chose not to receive further treatment for his shoulder pain and when Dr. Green concluded that Anderson had reached maximum medical improvement. See Report of Dr. Green (Feb. 17, 1998) [Record at 212]. Dr. Green noted that Anderson sustained a permanent impairment to his right shoulder, see id., and that he was limited to lifting ten pounds or less with his right arm. See SSA Decision at 9. In June 1998, Dr. Jones, a neurological surgeon, gave a similar assessment of Anderson's condition. See Independent Medical Evaluation of Dr. Jones (June 8, 1998) [Record at 226]. In her decision, the ALJ credited Dr. Brokke's opinion over Dr. Green's because it was rendered "at a later point in time, when [Anderson] had more fully recovered, and considered not only the shoulder injury, but the back problems of [Anderson]." SSA Decision at 9. Leaving aside the merits of this conclusion, we think it is ultimately of no consequence because the opinions of Dr. Brokke and Anderson's treating physicians are not inconsistent concerning Anderson's ability to lift and carry. Dr. Brokke's assessment was that Anderson was limited to lifting twenty pounds. Dr. Jones and Dr. Green both stated that Anderson was limited to lifting ten pounds with his right arm. We agree with the appellee that Anderson's ability to lift ten pounds with his right arm is not inconsistent with the ALJ's finding that Anderson has the residual functional capacity to lift twenty pounds occasionally. See SSA Decision at 12. Consistent with this view, the ALJ specifically found that Anderson could "do no overhead work with his right arm." Id. Moreover, contrary to Anderson's claim, nowhere in her opinion does the ALJ state that Anderson had recovered. See Br. of Appellant at 19. In short, we conclude the ALJ properly evaluated the various medical opinions in this case.

Anderson next argues that the ALJ improperly evaluated the credibility of his subjective complaints of pain and functional limitations. Specifically, he contends the ALJ discounted his obesity as a medically determinable impairment and his

symptoms of pain and fatigue. Here, the ALJ was required to consider all the evidence relating to Anderson's subjective complaints including evidence presented by third parties that relates to: (1) Anderson's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As we recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

With this in mind, we turn to Anderson's claim that the ALJ failed to consider his morbid obesity as an impairment. This claim is without merit. Although the ALJ noted Anderson's obesity in its decision, SSA Decision at 5, 8, Anderson never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing. Accordingly, this claim was waived from being raised on appeal. See Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996) (noting that the ALJ is under no "'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (quoting Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993)).

Anderson's other contention that the ALJ improperly discounted his subjective claims of pain and fatigue is similarly of no avail. In support of this argument, Anderson contends the ALJ improperly evaluated his use of narcotic pain medications, improperly stated that he was manipulative in trying to "convince" Dr. Richard Martin, a psychologist, that he was experiencing physical pain, and erroneously found that he was attending school. Br. of Appellant at 27–32. The ALJ's credibility determinations did not rest on these findings alone and included determinations that Anderson was capable of performing significant daily activities

and that his allegations of pain were inconsistent with other medical evidence in the record. Because the ALJ's findings are well supported in the record, we see no reason to disturb the ALJ's credibility findings that Anderson challenges.

For instance, the record supports the ALJ's finding concerning Anderson's possible overuse of narcotic pain medications. Dr. Martin noted that "There is a significant possibility of past/present problems with substance abuse . . . and [Anderson's] extensive present use of (presecribed) pain medications." MSE/Disability Evaluation of Dr. Richard Martin at 3 (Nov. 3, 1998) [Record at 253]. While we appreciate Anderson's need for prescribed medications to treat the severe pain caused by his shoulder impairment, we do not think that undercuts the ALJ's finding on Anderson's overuse of medications. See SSA Decision at 9. A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations. See Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain"). Relatedly, we find nothing improper in the ALJ's reference to Dr. Martin's observation that Anderson was "somewhat manipulative" in his efforts to "convince" him of his pain. See MSE/Disability Evaluation at 2 [Record at 252]. As a treating psychologist, Dr. Martin was within his field of expertise in making such an observation, and the ALJ properly considered this evidence in making a credibility determination. See Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (noting that ALJ may consider evidence that a claimant has exaggerated his symptoms when evaluating claimant's subjective complaints of pain). Finally, we do not think the ALJ's credibility determination hinged on whether Anderson was attending school during the relevant period of his disability (even if, as he maintains, he was only taking correspondence courses). Based on the record as a whole, we conclude the ALJ's determination that Anderson's complaints of pain were not fully credible is supported by substantial evidence.

For the reasons stated, we hold that the ALJ's decision is supported by substantial evidence in the record, and we accordingly affirm the judgment of the District Court.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The ALJ in this case failed to adequately consider the medical opinion of Paul Anderson's treating doctor; improperly ignored Anderson's undisputed account of his own pain and abilities; and, as a result, posed the wrong question to the vocational expert regarding Anderson's future in the competitive job market. For these reasons, I would reverse and remand to the Commissioner.

Paul Anderson, a right-hand dominant person, injured his right shoulder at his place of employment in March of 1997. He required surgery on August 18, 1997, and has been unable to obtain steady work since his injury. He has been diagnosed with severe degenerative disc disease and an impaired right shoulder. No one disputes the existence of Anderson's injury; the ALJ, however, concluded that despite his injury, Anderson can find other work in a full time competitive economy.

In making this determination, the ALJ improperly disregarded the opinion of Anderson's treating physician, Dr. Garber. She discounted Dr. Garber's Residual Functional Capacity Questionnaire because of perceived internal inconsistencies in his report. Most of the inconsistencies the ALJ describes, however, are not inconsistencies at all, but rather lingering questions she had about the medical reasons for Anderson's limitations. The ALJ contends that there are several points in the report where Dr. Garber indicated a restriction on Anderson's ability to work, but did not provide an explanation for the restriction. Dr. Garber answered each question on the Residual Functional Capacity Questionnaire as it was framed. He indicated that Anderson would need to take a break every forty-five minutes and would need frequent rests on the job. The ALJ takes issue with this assessment because Dr.

-9-

Garber did not explain why such breaks would be necessary, but the undisputed record reflects that there is no space on the form to provide such an explanation. Rather than summarily dismissing Dr. Garber's assessment for this reason, the ALJ should have contacted Dr. Garber to obtain further explanation. See Cox v. Apfel, 160 F.3d 1203, 1209 (8th Cir. 1998) (noting that an ALJ has an independent duty to fully and fairly develop the facts of the case). Just because the ALJ determined Dr. Garber's assessment was incomplete, does not mean the doctor's assessment was inconsistent.

It is clear on the record as it stands that Anderson would need to take frequent breaks on a job due to his shoulder injury and severe degenerative disc disease. Dr. Brokke, the consultative physician, noted Anderson experienced fatigue after his physical examination. Dr. Brokke's observation supports Dr. Garber's conclusion that Anderson would need frequent breaks on a job. If testing in a doctor's office tires Anderson out, certainly a few hours on the job would do the same.

The ALJ drew hasty conclusions from Dr. Garber's statements that Anderson has an unimpaired ability to walk, yet would require a break every forty-five minutes. The ALJ maintains that these two statements cannot coexist. Anderson's ability to walk, however, does not speak to his ability to maintain a certain body position throughout the workday. His need for breaks clearly derives from his undisputed back and shoulder problems.

The ALJ also placed too great an emphasis on Dr. Garber's later correction to his Residual Functional Capacity Questionnaire. In the original report, Dr. Garber did not place restrictions on Anderson's ability to lift weights. He corrected this by submitting a letter indicating Anderson could lift ten pounds occasionally, and less than ten pounds frequently. The ALJ disregarded this opinion, noting that Dr. Garber altered his restriction after talking to Anderson's attorney. There is nothing to suggest Dr. Garber altered his medical opinion because Anderson's attorney

-10-

convinced him to do so. Rather, it is more likely that Dr. Garber realized his mistake and sought to rectify it by supplementing the record. Furthermore, as this court has said before, a person's ability to lift weights does not translate into his ability to work in a competitive national economy. McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (stating that the residual functional capacity of a claimant "is not [found by] the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world").

The ALJ continued to incorrectly label other statements in Dr. Garber's report as inconsistencies. These include: 1) a limitation on Anderson's ability to handle and finger objects; 2) a limitation on Anderson's ability to sit for more than three hours; and, 3) a limitation on Anderson's ability to reach, push, and pull. The ALJ dismissed all of these observations as unsupported by any medical explanation. Once again, the ALJ is labeling an incomplete medical record as an inconsistent one. The proper course for the ALJ was to seek further explanation of Anderson's limitations, not to dismiss them outright. Cox, 160 F.3d at 1209.

Not only did the ALJ discount the treating physician's assessment of Anderson, but she also improperly disregarded Anderson's own unchallenged statements about his pain and abilities. The ALJ found Anderson's testimony incredible for three reasons. First, Dr. Martin, Anderson's evaluating psychologist, noted that during his examination of Anderson, Anderson appeared to be "convincing" him that he was in pain. Second, the ALJ concluded that Anderson was overusing his properly prescribed pain medications, and this was a contributing factor to his current problems. Finally, the ALJ maintained that Anderson's account of his pain and abilities was inconsistent with the findings upon medical examination. Even though the majority correctly points out that a claimant's "'credibility is primarily a matter for the ALJ to decide,'" ante at 7 (quoting Edwards v. Barnhart, 314 F.3d 964, 966

(8th Cir. 2003)), the ALJ must have a basis for discounting a claimant's credibility. Here there is no such basis.

Nothing in the record indicates that Anderson ever lied about the level of pain he was experiencing. In fact, the medical history supports the notion that Anderson was in fact experiencing severe pain. An ALJ should look to the dosage of the pain medication as a factor in determining the credibility of a claimant's stated level of pain. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Anderson was on several medications to help alleviate the pain he was experiencing in his shoulder. Certainly his treating doctors found his accounts of pain to be credible, or they would not have continued to prescribe him pain medication. Dr. Martin's statement that he thought Anderson was trying to "convince" him of his pain, suggesting he was not really in pain, is unfounded. During Anderson's one visit with Dr. Martin, a psychologist, he never examined Anderson's shoulder. Even Dr. Brokke, the consultative examiner, notes in his report that Anderson's right shoulder became "quite painful" only ten minutes after his physical examination of Anderson. Anderson consistently complained to all of his medical doctors about his pain, and none of them expressed doubt as to the sincerity of his complaints. There was no basis for the ALJ to rely solely on the speculation of Dr. Martin, when every other medical doctor that treated or examined Anderson believed he was in pain.

The ALJ also opined that Anderson was using too much pain medication. She based her conclusion on the "suspicions" of more than one physician. While several doctors expressed to Anderson the serious nature of the pain medications he was taking,[3] the only doctor who expressed such "suspicions" regarding addiction was Dr.

---

[3]Dr. Green, while indicating he would "try to stop the Vicodin," never indicated this was due to Anderson's misuse of the drug. Report of Dr. Green (Nov. 4, 1997) [Record at 215]. Similarly, Dr. Jones, the VA doctor, "warned the patient about continued use of [Percocet]," but never revealed he was concerned that Anderson was overusing the drug. Report of Dr. Jones (June 8, 1998) [Record at

Martin, the evaluating psychologist.  Dr. Martin's conclusion was pure conjecture; during Anderson's single visit he did not evaluate the severity of Anderson's pain, and consequently could not know the proper level of pain medication.  In fact, Dr. Martin himself suggested further diagnostic testing was necessary to test his "hypothesis" regarding Anderson's perceived misuse of prescription drugs.  None of the other medical doctors expressed Dr. Martin's concern.[4]  Once again, the ALJ chose to disregard the treatment plan prescribed  by all of Anderson's other doctors, and relied on Dr. Martin's unsubstantiated "hypothetical" of Anderson's drug abuse.

The ALJ further dismissed Anderson's statements regarding his range of motion and lifting ability as being inconsistent with Dr. Brokke's examination.  Dr. Brokke, however, only examined Anderson once, and could not have been aware of how Anderson would perform overtime on a job.  Accordingly, the ALJ had no basis for discrediting Anderson's testimony regarding the level of pain he experienced as a result of his back and shoulder problems.

Having improperly discredited Dr. Garber's assessment of Anderson's capabilities and Anderson's own account of his capabilities, the ALJ posed the wrong question to the vocational expert regarding Anderson's future in the competitive job market.  The ALJ told the expert that Anderson could lift twenty pounds occasionally, could do work at shoulder or chest level, could sit, stand, or walk for six hours in an eight-hour day with normal breaks, and was not restricted in the use of his hands or fingers.  On these facts, the vocational expert answered that Anderson could be employed as a telephone solicitor, gate tender, or a general clerk.  The facts the ALJ detailed, however, are not Anderson's actual capabilities.  Dr. Garber's evaluation

---

226].  These appear to be words of caution about potential addiction, rather than words of rebuke about a current addiction.

   [4]Dr. Garber did note that Anderson was receiving pain medication from two doctors, but nonetheless he continued prescribing Anderson pain medications.

-13-

indicates Anderson would have to take many breaks on the job, Anderson testified that he gets sore and would need to take many breaks on the job, and his treating physicians all agree that Anderson cannot lift more than ten pounds. The ALJ provided the vocational expert with an inaccurate view of Anderson's medical condition, and hence the vocational expert's opinion that Anderson could find work is not sound.

The ALJ failed to take into account important medical evidence from Dr. Garber and from Anderson in finding Anderson was not disabled. The ALJ's decision was based primarily on information provided by a one-time examining doctor, which, in my view, is not substantial evidence. Accordingly, I would reverse the district court with directions to remand to the Commissioner for a full and fair hearing, answering all of the questions that are raised by the ALJ's inadequate decision. See Payton v. Shalala, 25 F.3d 684, 686 (8th Cir. 1994) (holding where an ALJ does not fully develop the record, the court may remand for taking of further evidence).

_____