NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0819n.06
Filed: November 28, 2007

Case No. 07-5161

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CARLA G. SULLENGER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

BEFORE:  BATCHELDER and GILMAN, Circuit Judges; STAFFORD[*], District Judge.

**ALICE M. BATCHELDER, Circuit Judge.**  Claimant-Appellant Carla G. Sullenger ("Sullenger") filed an application for Social Security Disability Insurance Benefits ("DIB") with Appellee Commissioner of Social Security ("Commissioner") on April 9, 1999.  The Commissioner denied her application, and an Administrative Law Judge ("ALJ") subsequently found that Sullenger was not disabled.  The district court upheld the denial of benefits.  On appeal, Sullenger contends that the ALJ erred in finding her not disabled.  Because we find that substantial evidence supports the Commissioner's decision that Sullenger was not disabled, we **AFFIRM** the decision of the district court.

### I.  BACKGROUND

_____

[*]The Honorable William H. Stafford Jr., United States District Judge for the Northern District of Florida, sitting by designation.

## A. Factual History

On April 9, 1999, Sullenger applied to the Social Security Administration for DIB, alleging that she could not work due to severe back pain and mental impairments. At the time of her application, Sullenger was twenty-nine years old. The Commissioner denied her claim both initially and again on reconsideration.

Sullenger initially injured her back in December 1992 while working as a nurse's aide. In 1999, she stopped working due to pain in her lower back, depression and anxiety, and a seizure disorder. Sullenger's disability insurance expired on September 30, 2001.[1]

Since her initial injury, Sullenger has sought treatment from several doctors, including Dr. David Zetter. Dr. Zetter treated Sullenger for her back pain for several years, beginning in 1995. Throughout his time treating Sullenger, Dr. Zetter prescribed pain medication and recommended exercise programs, treatment with heat, ice, and massaging, but nothing more.

Sullenger also sought treatment from Dr. Van Woeltz, who performed a CT scan of Sullenger's back on May 21, 1999, which revealed a very mild degenerative facet hypertrophy. Dr. Woeltz also ordered an EMG/Nerve conduction study which showed no evidence of nerve problems in Sullenger's back. Furthermore, Dr. David Outland treated Sullenger for back pain on June 26, 1999, and determined that a back strain caused the pain Sullenger experienced.

State medical consultants reviewed Sullenger's record in July and October 1999 and placed limitations on her ability to work, concluding that she could do only "medium range" work. Dr.

---

[1]There is some dispute in the record as to the expiration date of Sullenger's disability insurance. The Commissioner claims that the expiration date is in fact June 30, 2001, and Sullenger does not contest this in her reply brief. The date of insurance expiration, however, is immaterial to the analysis, so we will accept Sullenger's claim that her insurance expired on the later date of September 30, 2001.

Zetter, however, determined on June 18, 2000, that Sullenger had a residual functional capacity ("RFC") to do only minimal work. Thereafter, on March 14, 2001, Dr. A. Ghafoor Baha, a pain specialist, evaluated Sullenger. He recommended that Sullenger perform physical therapy, take Ibuprofen for pain, and receive lumbar facet joint nerve blocks. None of the doctors Sullenger consulted regarding her back ailment ever significantly limited her activities.

Sullenger also alleged that she suffered from mental impairments. She initially sought help for depression in August 1997. In October 1997, Dr. Benjamin Parker, a psychiatrist at the Western Kentucky Regional Mental Health Clinic, concluded that Sullenger was "doing fairly well." Western Kentucky Regional closed Sullenger's case in March 1998.

In January 2000, Sullenger again complained of depression and returned to Western Kentucky Regional for help. A social worker, Thelma Hunter, diagnosed Sullenger with moderate, recurrent major depression. Hunter noted that Sullenger did not make significant progress because Sullenger had a low motivation for treatment and had missed several appointments. Nonetheless, Sullenger felt that her depression was improving. Ultimately, Hunter conducted a mental capacity assessment of Sullenger in April 2000 and concluded that Sullenger had an "unlimited/very good" or "good" ability in every area of mental functioning except for her ability to deal with work stresses, behave in an emotionally stable manner, and demonstrate reliability, for which Hunter gave Sullenger a "fair" rating. Dr. Parker evaluated Sullenger in May 2000 and completed a mental capacity assessment identical to Hunter's.

## B. Procedural History

Sullenger requested a hearing after the Commissioner denied her application for DIB. The matter went before an ALJ, who conducted a hearing and on July 27, 2000, determined that

Sullenger was not disabled. Sullenger then sought review in the District Court for the Western District of Kentucky. On January 23, 2003, the Commissioner moved to have the court remand the case pursuant to sentence four of 42 U.S.C. § 405(g).[2] The remand order required the Commissioner to hold a second hearing. Pursuant to the remand order, the Social Security Administration Appeals Council ("Appeals Council") vacated the first ALJ's conclusions, ordered a new hearing, and required the ALJ at the second hearing to further evaluate "the opinions of treating source, Dr. David Zetter, as well as consultative expert Dr. David Outland concerning [Sullenger's] residual functional capacity."

A second ALJ ("Second ALJ") conducted the rehearing on June 15, 2004. On July 8, 2004, he issued his final decision, finding that Sullenger was not disabled. The Second ALJ determined that Sullenger had the residual functional capacity to perform sedentary work that is neither fast paced nor quota driven. Citing the conclusions of Dr. Stephanie Barnes, a vocational expert ("VE"), the Second ALJ concluded that Sullenger could work as a surveillance system monitor, an order clerk, or an information clerk, and that there were significant numbers of those jobs in the national and Kentucky economies.

On October 26, 2005, the Appeals Council informed Sullenger that the Second ALJ had complied with its prior order and that it had no reason under Social Security Administration rules to exercise jurisdiction over Sullenger's case. Thus, the decision to deny Sullenger DIB became final on October 26, 2005. Sullenger then timely filed this action in the district court.

---

[2]"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

The district court adopted the Report and Recommendation of the Magistrate Judge finding that the ALJ's decision was supported by substantial evidence. This appeal, over which we have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, followed. Sullenger raises three issues on appeal. First, she contends that Dr. Parker's assessment of her mental capacity compels a finding that she is disabled. Second, she argues that the Second ALJ erred when he did not afford Dr. Zetter's medical opinions controlling weight. Third, she alleges that the ALJ improperly found that she was not credible.

## II. STANDARD OF REVIEW

On appeal of the denial of Social Security DIB, we conduct a de novo review of the district court's legal conclusion that the ALJ's decision was supported by substantial evidence. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). When deciding, under 42 U.S.C. §405(g), whether substantial evidence supports the ALJ's decision, we do not try the case de novo, nor do we resolve conflicts in evidence or decide questions of credibility. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Our de novo review is limited to a determination of whether the Commissioner's — in this case the ALJ's — findings are supported by substantial evidence. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993) (citing 42 U.S.C. § 405(g)).

We will uphold the Commissioner's decision if it is supported by substantial evidence. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). Substantial evidence is more than a scintilla, but less than a preponderance, *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992), and "exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (citing *Casey v. Sec'y of Health & Human Servs.*, 987

F.2d 1230, 1233 (6th Cir. 1993)).  That is, we will affirm the Commissioner's decision under the

substantial evidence standard even if we would have decided the matter differently, and even if

substantial evidence also supports the conclusion the Commissioner rejects.  *Cutlip v. Sec'y of

Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (per curiam) (internal citations omitted);

*see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

## III.  ANALYSIS

### A.  The Legal Framework for Evaluating Disability Claims

The ALJ's task is to determine whether a claimant is disabled under the Social Security Act.

Under the Social Security Act, "disability" is defined as the "inability to do any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period not

less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to qualify for DIB, the claimant must

demonstrate that she is disabled.  *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070

(6th Cir. 1992).  The ultimate decision rests with the ALJ, and the ALJ should look to all material

facts before making that decision.  *Id.*

The Commissioner's regulations require an ALJ to engage in a five-step sequential analysis

to determine whether an individual is disabled:

> (1) If a claimant is performing substantial gainful activity, she is *not disabled*.  20
> CFR § 404.1520(a)(4)(i).

> (2) If a claimant does not suffer from a severe medically determinable physical or
> mental impairment that meets the duration requirement, she is *not disabled*.  20 CFR
> § 404.1520(a)(4)(ii).

(3) If a claimant has an impairment that meets or equals one of the conditions in the Listings of Impairments and meets the duration requirement, she is *disabled*. 20 CFR § 404.1520(a)(4)(iii).[3]

(4) If the ALJ determines, after considering the claimant's residual functional capacity, that the claimant can still perform his past relevant work, then the claimant is *not disabled*. 20 CFR § 404.1520(a)(4)(iv).

(5) If the ALJ determines, after considering the claimant's residual functional capacity, age, education, and work experience, that the claimant can perform other work, then the claimant is *not disabled*. 20 CFR § 404.1520(a)(4)(v). Conversely, if the ALJ determines that the claimant cannot perform other work, then the claimant is *disabled*. *Id.*

If the ALJ finds any step dispositive, the review terminates. *Colvin*, 475 F.3d at 730.

**B.     The Second ALJ's Findings**

The Second ALJ properly conducted the five-step analysis described above. Under that analysis, he determined that the first prong was inconclusive because Sullenger had not engaged in substantial gainful activity. He then concluded that, because Sullenger's disc disease and depressive disorder are considered "severe," the second step is also inconclusive. Because Sullenger had an impairment lasting longer than one year, she met the durational requirement, but the Second ALJ determined that her impairments do not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4. Thus, step three was similarly inconclusive in deciding the matter.

Prior to evaluating the fourth step, the Second ALJ, with the help of VE Dr. Barnes, found that Sullenger could not perform any of her past relevant work. Consequently, he concluded that step four was inconclusive in determining the matter. In deciding step five, the Second ALJ found

---

[3]Before moving from step three to step four, the ALJ must determine the claimant's residual functional capacity. 20 CFR § 404.1520(a)(4).

7

that Sullenger: (1) was a younger individual; (2) had a high school education; and (3) had no

transferable skills from semi-skilled work. The Second ALJ's determination that Sullenger had an

RFC to perform a "significant range of sedentary work" resolved the disability issue at step five

because there were a significant number of jobs in both the national and Kentucky economies that

Sullenger could have performed. Therefore, he concluded that Sullenger was not disabled and

therefore was ineligible for DIB.

**C.      Adopting Dr. Parker's Assessment of Mental Functional Capacity does not Compel a Finding in Favor of Sullenger**

Sullenger first contends that Dr. Parker's assessment that she had only a "fair" ability to deal

with work stresses, behave in an emotionally stable manner, and demonstrate reliability compels the

court to conclude that she was disabled. "Fair," according to Dr. Parker's evaluation, means

"seriously limited but not precluded." The Second ALJ adopted Dr. Parker's assessment of

Sullenger's mental functional capacity, which applies to step five in the ALJ's analysis.

According to Sullenger, "fair" ability really means a "marked" limitation under applicable

legal standards and should compel a finding of disability. Sullenger would have the court hold that

"fair" in this context is not evidence of ability, but evidence of disability. *Cruse v. United States*

*Dep't of Health & Human Servs.*, 49 F.3d 614, 618 (10th Cir. 1995). In *Cruse*, the Tenth Circuit

held in the context there presented that a "fair" ability connotes a "marked" limitation and is

evidence of disability. We have previously addressed this issue, and we disagree.

Sullenger is attempting to take a definition that applies in step three of the analysis and apply

it to step five. The term "marked" is relevant in determining, under step three, whether a DIB

claimant has an impairment that meets or medically equals an impairment listed in Appendix I of

8

the code. "Marked" is a term of disability and refers to a limitation that is more than moderate but less than extreme. *Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991). "Fair," on the other hand, is used during step five of the analysis, determining the claimant's residual functional capacity. Sullenger cannot utilize a definition applicable in one step of the analysis to attack the ALJ's finding concerning another step in the analysis.

We recently adopted the Eighth Circuit's position that "the word 'fair' is both a measure of ability and disability." *Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007) (quoting *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000)). In *Colvin* we analyzed a medical assessment form similar to the one used in this case. We held that "fair" ability does not automatically mean that one has a "marked limitation," stating that "(i)t defies logic to assert that a finding of 'not precluded' actually means that one *is* precluded." *Id*. (emphasis in original). Therefore, we reject Sullenger's contention that "fair ability" equates to a "marked limitation."

Sullenger was not precluded from dealing with work stresses, behaving in an emotionally stable manner, or demonstrating reliability. Additionally, she had a good or very good ability in other areas, such as dealing with co-workers, following work rules, interacting with supervisors, maintaining her personal appearance, and functioning independently. In October 1999 a state psychologist concluded, after viewing Sullenger's record as a whole, that the medical evidence was insufficient to establish the existence of a mental impairment. Furthermore, Dr. Parker determined that, while Sullenger's depression was mildly or moderately limiting in the summer of 2000, medication controlled her depression problems well. These facts taken together certainly provided the Second ALJ with substantial evidence to find, based on the mental health assessment, that Sullenger was not disabled and that she had the ability to perform some work. Since "fair" in this

9

context is a term of ability and does not mean "marked," we conclude that adopting Dr. Parker's mental health assessment does not compel the court to find Sullenger was disabled.

**D.    The Second ALJ Properly Gave Dr. Zetter's Medical Opinion Limited Weight**

Sullenger next argues that the Second ALJ erred when he failed to give sufficient consideration to Dr. Zetter's opinion. An ALJ must give substantial deference to the medical opinion of a treating physician — and if that opinion is not contradicted, the ALJ must give it complete deference. *Walker*, 980 F.2d at 1070. The ALJ, however, "is not bound by treating physician's opinions, especially when there is substantial medical evidence to the contrary." *Cutlip*, 25 F.3d at 287. A treating physician's opinions are accorded great weight only "when they are supported by sufficient clinical findings and are consistent with the evidence." *Id*. An ALJ may reject a treating physician's determinations when he has good reason to do so. *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). The ultimate "determination of disability is the prerogative of the [ALJ], not the treating physician." *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Sullenger bears the burden of proving a disability. *See Cotton*, 2 F.3d at 695.

Dr. Zetter opined that Sullenger could only lift 15 pounds a few times an hour, could not do any frequent lifting, could stand/walk for only 30 to 90 minutes in an eight-hour work day, could only sit for two to four hours in an eight-hour work day, and that Sullenger would need to miss 5-10 work days per month because of her condition. The Second ALJ did not err in discounting Zetter's opinion on Sullenger's physical limitations because: (1) it was not supported by sufficient clinical findings; and (2) it was contradicted by substantial medical evidence.

First, significant clinical findings contradicted Dr. Zetter's opinion. Dr. Zetter treated Sullenger over a period of years, and never placed any limitations on her activities, prescribing

10

exercise and heat, ice and massage treatment. "A lack of physical restrictions constitutes substantial evidence for a finding of non-disability." *Longworth,* 402 F.3d at 596 (quoting *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)). Moreover, Dr. Outland attributed Sullenger's problems to a back strain, and also assessed no physical restrictions. Similarly, Drs. Woeltz and Baha assessed no physical limitations after they examined Sullenger.

Second, other substantial, objective medical evidence contradicted Dr. Zetter's opinion. A 1993 MRI taken shortly after Sullenger's initial injury did not reveal any disc herniation or bulge. Several months later an MRI showed only a mild degenerative bulging of the L5-S1 disc — not considered clinically significant. X-rays of the lumbar region in October 1998 were negative. A May 1999 CT scan yielded results similar to those of the 1993 MRIs. Finally, a June 1999 EMG/Nerve conduction study showed no evidence of problems. Therefore, a significant amount of objective medical evidence contradicts Dr. Zetter's findings.

Since substantial clinical findings and the objective medical evidence contradicted Dr. Zetter's opinion regarding Sullenger's ability, we hold that the Second ALJ properly accorded it limited weight.

E.      **The ALJ is the Ultimate Decider of Credibility**

Finally, Sullenger complains that the Second ALJ did not properly assess her credibility in accordance with 20 CFR § 404.1529. On appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact. *Smith*, 307 F.3d at 379. We will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility. *Id.*; *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

11

The analysis under 20 CFR § 404.1529 is two-pronged. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). First, the ALJ must examine whether there is "objective medical evidence of an underlying medical condition." *Id*. If there is objective medical evidence, then the ALJ must decide if the objective medical evidence: (1) confirms the severity of the alleged pain; or (2) if the established medical condition is of such a severity that it can be expected to produce the disabling pain. *Id*.

In the case at bar, there is some objective medical evidence of an underlying medical condition. The Second ALJ determined, however, that the weight of the objective medical evidence, particularly the numerous MRIs, CT scans, and examinations by medical personnel, does not confirm the severity of the alleged pain. For that reason, he found Sullenger not credible. We will not disturb ALJ Craig's credibility determination.

## IV. CONCLUSION

Because we conclude that substantial evidence supports the ALJ's determination that Sullenger was not disabled and that she had an RFC to perform sedentary work duties, we **AFFIRM** the judgment of the district court.