*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TOMMY J. MCCLANAHAN,

         *Plaintiff-Appellant,*

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

         *Defendant-Appellee.*

No. 05-6649

>

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 04-00350—Thomas Varlan, District Judge.

Argued: July 26, 2006

Decided and Filed: August 22, 2006[*]

Before: BATCHELDER and McKEAGUE, Circuit Judges; ACKERMAN, District Judge.[**]

_____

## COUNSEL

**ARGUED:** Kenneth A. Miller, MILLER & LEFEBVRE, Knoxville, Tennessee, for Appellant. Charles R. Goldstein, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee. **ON BRIEF:** Kenneth A. Miller, MILLER & LEFEBVRE, Knoxville, Tennessee, for Appellant. Charles R. Goldstein, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

_____

## OPINION

_____

     McKEAGUE, Circuit Judge. Plaintiff-Appellant Tommy J. McClanahan appeals the district court's denial of his motion for summary judgment and the grant of the Defendant-Appellee Commissioner of Social Security's motion for summary judgment affirming the Commissioner's decision and dismissing the case. McClanahan claims that the district court erred when it upheld the Commissioner's determination of the date of onset of his disability. For the reasons that follow, the ruling of the district court is affirmed.

_____

[*] This decision was originally issued as an "unpublished decision" filed on August 22, 2006. On December 29, 2006, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

## I. Background

McClanahan first applied for disability benefits and supplemental social security income in December of 1997, claiming that he was unable to work beginning February 28, 1997, due to degenerative disc disease. His initial application was denied, and he requested a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ issued a decision on September 20, 1999, denying McClanahan's disability claim. The ALJ's decision became the Commissioner's final decision on September 28, 2000, when the Appeals Council denied McClanahan's request for review.

McClanahan filed his first complaint in federal district court seeking review of the ALJ's decision on October 27, 2000. The parties filed cross-motions, each asking the district court to reverse the ALJ's decision and enter an order to remand the case for further fact-finding. The magistrate issued a report and recommendation, recommending that the motions be granted and that judgment be entered. On March 22, 2001, the district court entered an order accepting the magistrate's recommendation in its entirety. As a result of the order, the claimant underwent neuropsychological evaluation and a supplemental hearing was conducted.

Following the additional development of the record, McClanahan appeared represented by counsel on February 20, 2002, before a different ALJ, who found that McClanahan was disabled as of July 27, 2001, due to organic brain dysfunction, but not prior to that date. The ALJ's decision became the Commissioner's final decision on July 7, 2004, when the Appeals Council found no reason to assume jurisdiction.

On August 9, 2004, McClanahan filed a second complaint in federal district court seeking judicial review of the ALJ's February 20, 2002, determination. The magistrate judge issued a report recommending the entry of judgment for the Commissioner. After overruling McClanahan's objections to the report, the district court entered an order granting the Commissioner's motion for summary judgment. This timely appeal followed.

## II. Jurisdiction and Standard of Review

The district court exercised jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court has jurisdiction over the final ruling of the district court pursuant to 28 U.S.C. § 1291, 42 U.S.C. § 405(g), and 42 U.S.C. § 1383(c)(3).

This court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *Branham v. Gardner*, 383 F.2d 614, 626-27 (6th Cir. 1967). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted). This Court reviews questions of law *de novo. Smith-Wilkins v. Sec'y of Health and Human Servs.*, 880 F.2d 864, 866 (6th Cir. 1989).

### III. Analysis

McClanahan brings two issues on appeal.  First, he claims that the ALJ committed error because he applied the wrong legal standard when he determined the onset date of McClanahan's disability.  Second, he claims that the ALJ erred in finding that July 27, 2001, was the date of onset for his disability.

### A.  Disability Determination

An ALJ engages in a five-step sequential evaluation when deciding whether a claimant is entitled to social security disability benefits pursuant to 20 C.F.R. § 404.1520(a)(4).  The evaluation proceeds as follows:  1) the claimant's work activity is considered.  If he is performing substantial gainful activity, he will be found to be not disabled; 2) the severity of the claimant's alleged impairments is considered, including the duration; 3) the severity of the alleged impairment is considered compared to the disability listings, and if the impairment meets one of the listings, the claimant is found to be disabled; 4) if the claimant's impairment does not prevent him from doing past relevant work, a finding of not disabled will be made; 5) finally, even if the impairment does prevent him from doing past relevant work, the claimant's age, education, and work experience are considered along with the residual functional capacity to determine whether the claimant could adjust to other work.  *Id.*

During the sequential evaluation, if the claimant is found to be conclusively disabled or not disabled, the disability determination is made, and the inquiry is ended.  *Id.* ("If we can find that you are disabled or not disabled at a step, we do not go on to the next step.").

### B.  Wrong Legal Standard

McClanahan first claims that the ALJ erred when he did not mention Social Security Ruling 83-20 to establish the onset date of disability, and when he did not employ the correct legal standard in his disability determination.

Social Security Ruling 83-20 governs the determination of disability onset date.  Once a finding of disability is made, the ALJ must determine the onset date of the disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).   The ruling states, in relevant part:

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence.  These factors are often evaluated together to arrive at the onset date.  However, the individual's allegation or the date of work stoppage is significant in determining onset *only if it is consistent with the severity of the condition(s) shown by the medical evidence*.

SSR 83-20 at 1 (emphasis added).  Further, the ruling states that "the medical evidence serves as the primary element in the onset determination."  *Id.* at 2.

McClanahan claims that the ALJ "did not mention or apply the proper legal standard in determining the onset date of disability.  Once he found claimant disabled at Step 3 of the sequential evaluation process, he should have established the onset date using the legal standard set forth in Social Security Ruling 83-20."  Appellant's Br. at 14.  In particular, McClanahan urges that an earlier disability onset date should be identified, because the ruling states:

> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e. be decided on medical grounds alone) before onset can be established . . . . In some cases, it may be possible, based on the medical evidence, to reasonably infer that the onset of a disabling impairment

occurred some time prior to the date of the first recorded medical examination, e.g. the date the claimant stopped working.

SSR 83-20 at 2.

McClanahan argues that the ALJ's decision requires this court to remand the case "so the ALJ can create a record which forms a basis for the onset date" because the opinion fails to mention SSR 83-20, fails to explain the legal standard used to establish the onset date, and fails to offer any rationale for the onset date the ALJ identified. Appellant's Br. at 25.

### 1. ALJ not required to specifically mention SSR 83-20

McClanahan advances no legal authority for his theory that the ALJ applied the wrong legal standard when he failed to mention SSR 83-20 during the disability determination. He cites to *Blankenship v. Bowen*, 874 F.2d 1116, 1122 n.9 (6th Cir. 1989), wherein this court stated that Social Security Rulings are binding on all components of the Social Security Administration. These rulings represent "precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration] ha[s] adopted." 20 C.F.R. § 402.35(b)(1) (internal citations omitted). While we agree with this assertion, we do not find that it stands for the proposition that an ALJ must refer with specificity to Social Security Rulings when making disability determinations. Because the ALJ conducted the analysis required by the Ruling, his failure to mention it by name is not fatal to the decision. *See Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

### 2. The ALJ followed the dictates of SSR 83-20

We find that the ALJ did follow the requirements of SSR 83-20 when rendering the disability determination, even though the ruling was not specifically mentioned. Contrary to McClanahan's assertion, the ALJ performed a thorough and considered review of the record. He found that McClanahan met the criteria for organic brain dysfunction based on the findings of the neuropsychological testing performed by Dr. Miller. In his report, the ALJ summarized his rationale for his determination. He stated:

1. The claimant, who met the insured status requirements of Title II of the Act on February 28, 1997, and through the date of this decision, has not engaged in substantial gainful activity since such alleged disability onset date.

2. The medical evidence establishes that the claimant has "severe" impairments as set forth in the body of this decision.

3. The claimant's organic brain dysfunction has met the criteria of section 12.02 of the Listing of Impairments, from July 27, 2001, and thereafter, but not prior thereto.

4. Prior to July 27, 2001, the medical evidence fails to establish that the claimant had impairment(s) satisfying the criteria of any section of the Listing of Impairments. His borderline intellectual functioning and depression imposed no more than "moderate" restriction of daily activities, or ability to maintain social functioning, or ability to sustain concentration, persistence, or pace. There were no repeated episodes of mental decompensation, and no showing of inability to function adequately outside of a highly supportive setting.

5. The claimant's subjective complaints of functional limitation are disproportionate to the medical evidence and are not fully credible for the period prior to July 27,

2001, considering both medical and other evidence of record. (20 C.F.R. §§ 404.1529 and 416.929).

6. From February 28, 1997, through July 26, 2001, the claimant had the residual functional capacity to perform light exertion, provided he perform no more than simple, unskilled tasks and perform no work requiring close interaction with co-workers or supervisors.

7. From February 28, 1997, through July 26, 2001, the claimant was unable to perform past relevant work.

8. From February 28, 1997, through July 26, 2001, the claimant was a "younger person".

9. The claimant has marginal literacy.

10. Based on an exertional capacity for light exertion and the claimant's age, education, and work history, 20 C.F.R. §§ 404.1569 and 416.969 and Medical-Vocational Guideline Rule 202.18 would direct a finding of "not disabled."

11. Although additional nonexertional limitations did not allow the claimant to perform the full range of light exertion, using the cited rule as a framework for decision making, there were significant numbers of jobs in the regional and national economies that he could perform prior to July 27, 2001, examples of which are set forth in the body of this decision.

12. The claimant was under a "disability" as defined in the Social Security Act and Regulations commencing July 27, 2001, but not prior thereto. (20 C.F.R. §§ 404.1520(d), (f) and 416.920(d), (f).)

Tr. 277-78.

In the body of his report, the ALJ discussed the method he used to ascertain the disability onset date. He stated:

Although organic brain dysfunction has been diagnosed, the undersigned notes that medical documentation thereof did not occur prior to Dr. Miller's report of July 27, 2001. Consequently, the medical evidence cannot support a finding that such impairment met the criteria of Listing 12.02 prior to such date. *Therefore, it remains for consideration whether Mr. McClanahan was disabled prior to July 27, 2001.*

Tr. 273 (emphasis added). The ALJ then engaged in a careful review to ascertain whether McClanahan's medical record supported a finding of disability onset prior to July 27, 2001:

Consultative examiner Robert Spangler, Ed.D., noted in January 2001 that Mr. McClanahan was oriented in all four spheres, that he had adequate recall of recent and remote events, and that he repeated 3 words after 5 minutes, connoting significant short-term memory capacity. He also performed serial five subtractions without error and showed no loose associations or illogical language. He endorsed preparing his own meals when his wife was at work, watching television with some difficulty in concentration, taking out the trash, and playing with his dog. He endorsed physical difficulties and pain as contributing to his limited activities. The examiner assessed him as having adequate social skills, as well. He had received no specialized mental health treatment prior to January 2001. Consistent with Dr.

Spangler's findings and assessments, and the opinion of a designated State Agency medical consultant in January 2001, the undersigned concludes that the "B" and "C" criteria of section 12.04 of the Listing of Impairments were not met, in that no more than "moderate" restriction of activities of daily living or ability to perform social functioning or to sustain concentration, persistence, or pace were present. Similarly there is no evidentiary basis for concluding that he was incapable of functioning adequately outside of a highly supportive setting. Thus, the undersigned finds that no mental disorder met listing criteria prior to July 27, 2001.

Tr. 274. The ALJ reviewed the record for indications that disability onset occurred prior to the July 27, 2001, diagnosis date, and found that the medical evidence did not support such a finding. While he did not specifically mention SSR 83-20, he followed the guidelines set out in the ruling.

McClanahan claims that pursuant to SSR 83-20, the ALJ should have called on a medical expert to infer the date of onset in his case, because "the claimant presented a prima facie case of disability and the burden shifted to the Commissioner." Appellant's Br. at 24, n.9. In support of this theory, McClanahan relies on the following excerpt from SSR 83-20:

> In some cases, it may be possible, based on the medical evidence[,] to reasonably infer that the onset of a disabling impairment occurred some time *prior to the date of the first recorded examination*, e.g. the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in a particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

*Id.* (emphasis added). McClanahan then attempts to buttress his burden-shifting argument by citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 238 (6th Cir. 2002). In *Howard*, this court stated: "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *Id.* (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)). The case offers no opinion concerning the burden of proof for the determination of onset date, nor does it even imply that the burden would shift to the Commissioner. In fact, it states conclusively that the burden only shifts at the fifth step of the disability determination inquiry.

Upon review, we find no merit to McClanahan's claim that the ALJ erred by not requiring a medical expert to infer an onset date pursuant to SSR 83-20. The portion of the ruling that McClanahan relies on contemplates situations when an individual claims disability and there is no development of the medical record on which the ALJ can rely to ascertain onset. This is not the case here. In fact, McClanahan's medical record was well developed and carefully reviewed by the ALJ.

Further, the ALJ did elicit testimony relevant to the disability onset date from Dr. Buckner, a psychologist. Buckner opined that McClanahan's organic brain dysfunction may have been caused by head injuries that he sustained in 1996 and 1997, but he could not say so with certainty. During questioning, Buckner stated:

> **Buckner:** You know, the second one, the second [head] injury could be the cause of most of the problem. I'm not sure which one was the cause, but either one, you know, could have caused that [organic brain dysfunction]. And the second one could be the reason that he seemed to get so much worse.

> **ALJ:** But we really don't know, do we?

**Buckner:** No.  It's pretty difficult with – you know, with closed head injuries to know for sure.

Tr. 624.   During oral argument on appeal, counsel for McClanahan was questioned concerning whether he attempted to elicit testimony from Buckner concerning the date of disability onset. He replied that he had not, because he believed the burden was on the ALJ to establish the onset date, and further, he believed that he had "won" once Buckner had opined that the second head injury could have been the cause of most of the problem.

We disagree with McClanahan's assertion that the ALJ failed to follow the correct legal standard in this instance.  His assertion that the ALJ had the burden of proof to establish  the onset date is unsupported by any legal authority, and runs counter to the general regulatory burden of proof that requires claimants to prove their disability to the Commissioner.  *See* 20 C.F.R. § 404.1512 (a).  Further, counsel may not now complain because he failed to cross examine Buckner when he had an opportunity to do so,  just because he believed that Buckner had offered a favorable opinion.  *See, e.g.*, *Baranich v. Barnhart*, 128 F. App'x 481, 490 (6th Cir. 2005) (finding that ALJ committed no error when attorney voluntarily abandoned questioning of vocational expert).

McClanahan next argues that the ALJ erred in proceeding to step four of the inquiry after he determined that McClanahan was disabled after July 27, 2001, at step three of the analysis.  He claims that pursuant to 20 C.F.R. § 404.1520 (a) (4), "the ALJ should not go on to the next step.  The ALJ should have applied Social Security Ruling 83-20."  Appellant's Br. at 16.  This argument is unavailing for two reasons.  First, McClanahan  failed to raise this issue below.  This court cannot entertain an objection to a magistrate judge's report and recommendation that was not previously raised.  "[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."  *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Here, McClanahan failed to raise this objection to the magistrate's report and recommendation, which found no error with the ALJ's analysis.

 Second, the sequential analysis that McClanahan asserts was improper was not improper. The ALJ was ascertaining the status of McClanahan's disability claim *prior* to the July 27, 2001, finding of disability when he looked at step four.  He engaged in this analysis in order to determine whether McClanahan could have performed work during the period of time between his alleged disability in 1997 and the finding of the listed disability of July 27, 2001.  *See* Tr. 273-73.  He was not attempting to determine McClanahan's residual functional capacity after the date of disability.

Having found that the ALJ did not apply the wrong legal standard, we turn to the question of whether there was substantial evidence in the record to support the July 27, 2001, onset date.

**C.  July 27, 2001, Onset Date**

McClanahan next argues that the ALJ was not justified in using July 27, 2001, as the onset date for his disability.  He relies on *Blankenship*, 874 F.2d at 1122, to support his assertion that it was improper for the ALJ to rely on the date of Dr. Miller's neuropsychological examination to determine the date of disability.  In *Blankenship*, this court stated:

By choosing this date [of an examination], the ALJ was, in effect, erroneously requiring the impairments to reach Listing severity before finding appellant disabled, and erroneously failing to draw any inferences from the medical and other evidence as to whether appellant was able to engage in substantial gainful activity prior to the expiration of his insured status.

*Id.* McClanahan asserts that *Blankenship* "observed that common sense and Social Security Ruling 83-20 dispel the notion that a claimant suddenly becomes disabled on the date of the examination." Appellant's Br. at 21 (citing *Blankenship*, 874 F.2d at 1122).

McClanahan then identifies entries in the record to support his claim that he was suffering from a disability much earlier than the July 27, 2001, examination date. He claims that the ALJ failed to consider the aforementioned testimony of Dr. Buckner, who opined that McClanahan's organic brain dysfunction may have been caused by earlier head injuries. McClanahan also points to Buckner's testimony concerning his depression as evidence of earlier disability. At the hearing, the ALJ questioned Buckner about McClanahan's history of depression:

> **ALJ:** We didn't talk about 1204 [depression] with the psychologist. Let me ask a couple questions. Have there been any episodes of decompensation with this individual on the basis of depression?
>
> **Buckner:** They're – yes, appear to have.
>
> **ALJ:** Of how long a duration? If I can rephrase it, maybe it'd help. Is there a particular episode of decompensation you can identify from the testimony or the records?
>
> **Buckner:** Dr. Nevils in his – in describing the background, says that Mr. McClanahan reports in that January '99 evaluation of having been depressed for the last one and a half years. He's also showing some paranoia at that point . . . . There's a suicide attempt reported in 1999. I would consider that, you know, decompensation, deterioration.
>
> **ALJ:** None of them required psychiatric hospitalization, though, did they?
>
> **Buckner:** I didn't see any record of that.

Tr. 633.

In response to McClanahan's claim that the ALJ failed to consider important evidence, the Commissioner argues that the ALJ's finding is supported by substantial evidence in the record, notwithstanding the aforementioned testimony. The Commissioner points out that although the medical record includes the reports of the two head injuries suffered by McClanahan, the record does not show that he was suffering from organic brain dysfunction prior to July 27, 2001. Dr. Huskey, McClanahan's treating physician, made no entries in the medical record following the 1997 head injury through 2001 suggestive of organic brain dysfunction. His basis for the claimant's disability claim was degenerative disc disease.

Further, Dr. Spangler, a consultative psychologist for the State of Tennessee, reported that in January of 2001, "Mr. McClanahan had adequate recall of remote and current events; repeated three words after five minutes; repeated seven numbers presented serially; knew the current president and two recent predecessors and easily performed serial fives." Appellee's Br. at 33 (citing Tr. 392). The Bender Visual-Motor Gestalt test administered in January of 2001 indicated no organic brain dysfunction. *Id.* In March of 2001, Dr. Huskey reported that he had never diagnosed McClanahan with mental retardation, and that he had never referred him for any mental health treatment. *Id.*

> In sum, during the four-year period beginning in February 1997, when Mr. McClanahan complained to Dr. Huskey of seeing dots [after his head injury] to and including his March 2001 examination with Dr. Huskey, Dr. Huskey never

diagnosed a neuropsychological condition. Four consultative examiners reported multiple negative findings, and Dr. Spangler administered a neuropsychological test (the Bender Visual-Motor Gestalt) just six months before Dr. Miller's examination, the results of which were completely normal. The ALJ could easily rely on this plethora of evidence to find that Mr. McClanahan's disability did not begin until Dr. Miller found medical signs of, and diagnosed organic brain dysfunction on July 27, 2001.

Appellee's Br. at 34.

Concerning McClanahan's claim that he was disabled because of depressive symptoms, the Commissioner states that the ALJ properly relied upon the findings of the state disability medical consultant's opinion as well as the rest of the record to find that McClanahan's depression was not disabling any time prior to July 27, 2001. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding that a state agency medical consultant's opinion supported by the opinion of a consultative examiner may constitute substantial evidence for an ALJ's determination). The record shows that Huskey never referred McClanahan for any mental health treatment during the years in question. And, although Buckner testified that McClanahan displayed symptoms of depression, his testimony does not support the listing requirements under 20 C.F.R. pt. 404 app. 1 for disability due to an affective disorder.

We agree with the Commissioner. Substantial evidence exists in the record to support the ALJ's decision that the plaintiff was not disabled before July 27, 2001. McClanahan initially applied for benefits complaining of back pain and degenerative disc disease. The medical records of his primary care provider, Dr. Huskey, and consulting neurosurgeon, Dr. Killeffer, give no indication that McClanahan was suffering from organic brain dysfunction or a disabling mental health disorder. *See* Tr. 221-27, 228-34. Further, during the period of alleged disability, four consultative psychological examiners, Drs. Nevils, Page, Spangler, and Abraham, did not find that McClanahan met the listing level for a disabling Affective Disorder. *See* Tr. 202-07, 208-20, 389-90, 396-97. Further, the findings of an ALJ are not subject to reversal merely because there is substantial evidence in the record to support a different conclusion. *See Buxton*, 146 F.3d at 772.

We also find *Blankenship* easily distinguishable from the facts here. In that case, we stated:

Although the Secretary is not required to present evidence that would eliminate a possible onset date any time from 1979 to 1984, the Secretary still must establish by substantial evidence that the disability began November 13, 1985 [the examination date]. Considering all the evidence that detracts from this finding, including appellant's subjective complaints and the proper weight they are to be given, the Secretary has not met this burden.

874 F.2d at 1121 (internal citation omitted). In *Blankenship*, the claimant was diagnosed with multiple psychiatric disorders including chronic generalized anxiety neurosis, conversion reaction, and schizoid personality, all well in advance of his disability determination for schizophreniform disorder. *Id.* In short, the medical record in *Blankenship* contained a plethora of evidence supporting an earlier onset date of disability. Such is not the case here, where the bulk of the medical evidence in the record does not support an earlier onset date for organic brain dysfunction. In this case, we find that substantial evidence supports the ALJ's decision that McClanahan was not disabled prior to July 27, 2001.

## IV. Conclusion

For the aforementioned reasons, the ruling of the district court upholding the Commissioner's finding that McClanahan was not disabled prior to July 27, 2001, is AFFIRMED.