NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0222n.06

No. 17-2400

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Apr 30, 2018

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MOHAMED AHMED MOKBEL-ALJAHMI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: GIBBONS, BUSH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge.    The Commissioner of Social Security determined that Mohamed Ahmed Mokbel-Aljahmi was not entitled to social security disability benefits for his physical and mental impairments because he was able to perform light work with certain restrictions.  Mokbel-Aljahmi sought review of that decision in the district court, contending that the decision was not supported by substantial evidence.  The district court granted summary judgment in favor of the Commissioner.  We AFFIRM.

I.

Mokbel-Aljahmi was involved in an automobile accident in February 2011, which caused injuries to his back and legs.  Since the accident, Mokbel-Aljahmi has undergone a series of

diagnostic tests. The administrative law judge (ALJ) described the diagnostic tests related to

Mokbel-Aljahmi's back and leg issues as follows:[1]

> A magnetic resonance image (MRI) of the claimant's lumbar spine performed in February 2011 [showed] moderate degenerative changes at L5-[S]1 disc level, minimal degenerative changes [at] L3-L4 and L4-L5, minimal to mild disc bulges at L3-S1, mild-to-moderate bilateral neural foraminal narrowing at the L5-S1 level, grade 1 anterolisthesis of L5 on S1, and bilateral L5 spondylosis. There was no significant canal stenosis or fracture at any level, and the report did not indicate any nerve root compression. A thoracic MRI revealed mild multilevel thoracic spondylosis and minimal upper thoracic disc bulges, but no significant canal or foraminal stenosis and no thoracic cord abnormalities.
>
> The following month, a cervical MRI revealed moderate right paracentral disc herniation at C3-C4 and C4-C5 and multilevel disc desiccation, but no central canal stenosis or foraminal stenosis at any level. Shoulder MRIs revealed a small SLAP tear of the glenoid labrum in both shoulders, . . . and AC degenerative changes without impingement. There was a complex partial thickness tear of the right distal rotator cuff tendon, and [a] small complex partial thickness tear of the left distal rotator cuff tendon with mild intrasubstance edema. There were no fractures or contusions in either shoulder.
>
> In April 2011, the claimant underwent an electromyography/nerve conduction study (EMG/NCS), secondary to complaints of cervical and lumbar pain radiating into the bilateral legs and right arm. The study revealed evidence of right C5 and left L5-S1 radiculopathy, as well as *mild* bilateral median sensory neuropathy across the wrists (carpal tunnel syndrome).
>
> After 2011, the record contains no musculoskeletal images until February 2013, when the claimant underwent several x-rays as part of a consultative medical examination. A lumbar x-ray revealed narrowing and vacuum disc phenomenon at L5-S1 and anterior offset of L5 on S1, but no fracture, dislocation, or bony destruction. Two views of the right and left tib-fib (knee and shin areas) revealed minimal degenerative osteoarthritic changes, with no fracture, dislocation, or bony destruction.

(Internal citations omitted).

Mokbel-Aljahmi saw three physicians—neurologist Bassam Maaz, M.D.; internist

Mahmood Rahim, M.D.; and orthopedist Jiab Suleiman, D.O.—for treatment at various times

---

[1] Although Mokbel-Aljahmi contends that the ALJ underrepresented the severity of the physical impairments shown in the diagnostic studies, he made no such objection before the district court and, therefore, has not preserved the issue for appellate review. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006).

following the accident. These doctors all opined that, based on their views of Mokbel-Aljahmi's physical limitations, he was unable to perform even sedentary work (Dr. Maaz and Dr. Rahim) or was "disabled from any gainful employment" (Dr. Suleiman). Mokbel-Aljahmi was also examined by psychiatrist Mufid Al-Najjar, M.D.; agency medical expert Dinesh Tanna, M.D.; and consultative experts Nick Boneff, Ph.D., and Katherine Karo, D.O.

In July 2011, Mokbel-Aljahmi filed an application for social security disability insurance benefits, alleging that he was disabled as of February 13, 2011, due to injuries from the accident and heart problems. After his application was denied, Mokbel-Aljahmi requested a hearing before an ALJ. The ALJ issued a decision denying Mokbel-Aljahmi's claim. Mokbel-Aljahmi requested review of that decision by the Appeals Council, which remanded the matter to the ALJ for further consideration.

On January 12, 2015, the ALJ held a second hearing, after which the ALJ again found that Mokbel-Aljahmi was not disabled. The ALJ followed the sequential, five-step evaluation required by 20 C.F.R. § 404.1520. Relevant to this appeal, the ALJ determined that under step four, Mokbel-Aljahmi had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [N]o climbing ladders, ropes or scaffolds; only occasional climbing ramps and stairs, balancing, stooping, crouching and kneeling; no crawling; no overhead reaching and handling; frequent fingering; avoiding concentrated exposure to extreme cold, heat, wetness and humidi[t]y, environmental irritants, and poorly ventilated areas; avoiding concentrated use of moving machinery and all exposure to unprotected heights; only occasional decision-making and changes in the workplace setting; and only occasional interaction with the general public.

In reaching this conclusion, the ALJ largely dismissed the opinions of the treating physicians and examining doctors that Mokbel-Aljahmi could not perform such work as inconsistent with the medical evidence. The ALJ explained:

> [T]he above residual functional capacity assessment is supported by diagnostic studies showing only mild to moderate impairments of the claimant's spine, shoulders, knees, and lungs; treatment notes documenting moderate limitations and symptom control with conservative treatment; and the claimant's demonstrated capacity for daily activities consistent with work-like activities. The medical records reflect far fewer physical and mental limitations than reported in the treating source's opinion statements; therefore, the former was afforded greater weight than the latter. The medical evidence of record and the claimant's function report statements describing his limitations demonstrate that such limitations will not interfere with his ability to function independently, appropriately, effectively, and on a sustained basis. I have considered the claimant's allegations and has [sic] found them inconsistent with the objective medical findings in the record. The claimant's testimony is not well supported by the objective medical evidence in the record and while given appropriate consideration, it was not given significant weight. Consideration has also been given to the reports of the state agency medical consultants as well as to other treating, examining, and non-examining medical sources. Further, the residual functional capacity addresses demands which might exacerbate the claimant's symptomatology, as well as having considered the location, duration, frequency, and intensity of the symptomatology. The medical record supports the above residual functional capacity assessment.[2]

Based on this residual functional capacity, the ALJ concluded that Mokbel-Aljahmi could not perform his past work as a machine tender. Under step five, however, the ALJ determined that, consistent with the testimony of the vocational expert, Mokbel-Aljahmi could perform work as an assembler, sorter, or packager, and that such jobs existed in significant numbers in the national economy. The ALJ therefore concluded that Mokbel-Aljahmi was not disabled and denied his claim for benefits.

Mokbel-Aljahmi again requested review of the decision by the Appeals Council, but the Appeals Council denied his request. He then filed the instant suit in the district court. After the

---

[2] Although the ALJ discussed the mental health evidence and included some mental limitations in the residual functional capacity, Mokbel-Aljahmi only perfunctorily addresses the ALJ's assessment of the mental health evidence on appeal, offering nothing more than allegations of conflicting evidence and the conclusory and unsupported statement that the ALJ erred by "equat[ing] a neurologist's high level mental status evaluation with a Psychiatrist's specialized mental status exam." These cursory statements were insufficient to preserve for appeal Mokbel-Aljahmi's argument that the residual functional capacity did not adequately account for his mental limitations. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

matter was referred to a magistrate, the parties filed cross-motions for summary judgment. The magistrate recommended that the district court deny Mokbel-Aljahmi's motion for summary judgment and grant the Commissioner's motion. Over the objections of Mokbel-Aljahmi, the district court adopted the magistrate's recommendation and granted the Commissioner's motion for summary judgment. Mokbel-Aljahmi timely appealed to this Court.

II.

Although we review a district court's decision to deny disability benefits de novo, we are "limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)).

A.

A person is disabled within the meaning of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Federal regulations require ALJs to evaluate disability claims using the following five-step sequential process:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual

functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). "The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Id.* (citation omitted).

Mokbel-Aljahmi disputes the ALJ's determination of his residual functional capacity. Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). Here, the ALJ found that Mokbel-Aljahmi had the residual functional capacity to perform "light work," with the various restrictions described above, including reaching in all directions except overhead. 20 C.F.R. § 404.1567(b) defines "light work" as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requir[ing] a good deal of walking or standing" or "involv[ing] sitting most of the time with some pushing and pulling of arm or leg controls." A person must be able "to do substantially all of these activities" in order "[t]o be considered capable of performing a full or wide range of light work." § 404.1567(b).

B.

Mokbel-Aljahmi contends that evidence in the record showed that he "is unable to perform even sedentary work, is not able to walk and stand most of the day, [and] is not able to

reach even occasionally in all directions."[3] But on review, it is not for us to decide if there was evidence in favor of Mokbel-Aljahmi's position. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alteration in original) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). We decide only whether there was substantial evidence to support the ALJ's decision. *Id.* If so, we defer to that decision even in the face of substantial evidence supporting the opposite conclusion. *Id.*

There was evidentiary support in the physicians' reports for the ALJ's residual functional capacity finding that Mokbel-Aljahmi could handle the standing and walking requirements of light work. In 2011, Dr. Maaz remarked that "[m]uscle bulk and tone are normal," "gait is normal," and "tandem walk is normal." In 2012, Dr. Maaz stated that, "[i]n the lower extremities, strength is 5/5 on right leg in all muscle groups, and 4/5 on the left." He also reported that even though Mokbel-Aljahmi used a cane for support, his "[h]eal [sic], toe, and tandem walking are performed without difficulty." Dr. Maaz made similar statements in 2014 and 2015. Regarding Dr. Rahim, the ALJ explained, "Dr. Rahim reported observations of tenderness, muscle spasm, and reduced movement in the claimant's back in 2011, but did not report substantial limitations in strength, sensation, or coordination." In 2014 and 2015, Dr. Rahim noted muscle and joint tenderness but also reported that Mokbel-Aljahmi had "normal movement of all extremities" and found his "sensation normal, motor function normal, no gait

---

[3] By not objecting in the district court, Mokbel-Aljahmi did not preserve for appeal any argument regarding the handling and fingering limitations set forth in the residual functional capacity. *See McClanahan*, 474 F.3d at 837. Mokbel-Aljahmi contends in his reply brief that he did object to the manipulative limitations before the district court. Yet he points only to one statement in his objections to the magistrate's report and recommendation. We find this insufficient to preserve the issue for appellate review.

and stance, reflexes normal, peripheral nerves normal." In 2011, Dr. Suleiman observed that Mokbel-Aljahmi "has tenderness in his thoracic spine on both sides," but "has good [range of motion] in the hips, knees and ankles. Reflexes are within normal limits. Strength is good in his lower extremities. . . . He walks with a normal gait." In 2013, Dr. Karo observed that Mokbel-Aljahmi was "able to squat in full without pain" and was "[a]ble to bear weight on the right, on the left and bilaterally without pain." She also observed that "his gait in the exam room [was] non-antalgic, stable and he does not limp. Can sit and stand without assistance." She stated that "[t]here is no physical limitation of sitting, standing and walking."

Mokbel-Aljahmi argues that the ALJ's limitation of "no overhead reaching" is insufficient to accommodate his physical impairments, but there was evidence in the record that Mokbel-Aljahmi could reach in other directions, thus supporting the ALJ's limitation of "no overhead reaching." It does not appear that Dr. Maaz included a limitation on Mokbel-Aljahmi's ability to reach. But he often reported normal strength and sensation in Mokbel-Aljahmi's arms. For example, in 2012, Dr. Maaz stated, "In the upper extremities, strength is 5/5 bilaterally in all muscle groups." And although Dr. Rahim at times indicated a limited range of motion in Mokbel-Aljahmi's extremities, his treatment notes also offered the notation of "normal movement of all extremities" on numerous occasions.[4]

---

[4] Mokbel-Aljahmi contends for the first time on appeal that the "normal movement of all extremities" notations were default entries entered once Dr. Rahim failed to complete that section of his office visit forms and suggests that we should therefore rely instead on Dr. Rahim's notations that indicated a limited range of motion. In addition to noting Mokbel-Aljahmi's failure to preserve this issue for appeal, we observe only that the ALJ found the "normal movement of all extremities" entries persuasive and that it is not our role on appeal to resolve conflicts in the evidence. *See Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) ("We will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984))).

We do not dispute that some evidence supports Mokbel-Aljahmi's argument that he is unable to perform light work and unable to reach in all directions. But our review on appeal is limited to determining whether substantial evidence supported the ALJ's residual functional capacity determination. *See Blakely*, 581 F.3d at 406. Considering the above evidence, which the ALJ carefully documented as support for the residual functional capacity finding, we cannot say that the ALJ erred.

## C.

Finally, Mokbel-Aljahmi notes that, in assessing his residual functional capacity, the ALJ gave no weight to nearly all the physicians' opinions regarding Mokbel-Aljahmi's ability to stand, walk, or reach, finding them inconsistent with the physicians' own notes.[5] Mokbel-Aljahmi contends that once the ALJ decided to give no weight to the physicians' opinions regarding his ability to work, the ALJ was required to get the opinion of another physician before setting the residual functional capacity. We disagree. We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence

---

[5] We do not consider whether the ALJ did so improperly—that is, we do not consider whether the ALJ improperly discounted the treating and examining physicians' opinions regarding Mokbel-Aljahmi's physical limitations. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (stating that "the ALJ must provide 'good reasons' for discounting treating physicians' opinions" (internal quotation marks and citation omitted)); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (stating that examining physicians' opinions are afforded some deference—less than treating physicians' opinions, but more than non-examining physicians' opinions). In his objections to the magistrate's report and recommendation, Mokbel-Aljahmi made no such objection. *See McClanahan*, 474 F.3d at 837 ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review." (alteration in original) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987))). Moreover, even in his opening brief before this Court, Mokbel-Aljahmi does not contend, other than in one conclusory statement in his argument summary section, that the ALJ failed to provide good reasons for discounting the treating physicians' opinions. *See Johnson*, 440 F.3d at 845–46 (explaining that an appellant forfeits "issues not raised and argued in its initial brief on appeal" and "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" (citations omitted)). Accordingly, this issue is not before us.

unless a physician offers an opinion consistent with that of the ALJ. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence"). We similarly find no error here. The ALJ undertook a laborious evaluation of the medical record when determining the residual functional capacity, and substantial evidence supports the ALJ's conclusions.

\* \* \*

We AFFIRM the judgment of the district court in favor of the Commissioner.