NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0464n.06

No. 23-3362

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 08, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| SAMANTHA FOLTZ obo R.B.K.F., a minor, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

Before: MOORE, GIBBONS, and STRANCH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** This case comes before us on behalf of R.B.K.F., a minor, who was denied Supplemental Security Income ("SSI") payments. Throughout R.B.K.F.'s short life, he has experienced a plethora of health issues, including diagnoses of hypogammaglobulinemia, anemia, failure to thrive, and pharyngeal dysphagia, among others. After the Social Security Administration ("SSA") rejected R.B.K.F.'s claim, R.B.K.F. requested a hearing before an Administrative Law Judge ("ALJ"), who evaluated R.B.K.F.'s claim for SSI payments with the requisite three-step framework for determining disability eligibility. The ALJ found that, although R.B.K.F. met the test's first two requirements because he was not engaged in substantial gainful activity and did suffer from severe impairments, he failed on the third step, because he did not have a condition named in the SSA's Listing of Impairments, nor did his condition functionally or medically equal any listing. The ALJ subsequently rejected R.B.K.F.'s claim for benefits. The district court held that the ALJ had sufficiently described the overall evidence on the record and had substantial evidence for its opinion and affirmed the

Commissioner's decision. An appeal was filed on R.B.K.F.'s behalf. We AFFIRM the district court's judgment.

## I. BACKGROUND

### A. R.B.K.F.'s Medical Background and Condition

R.B.K.F., a minor, has been plagued with myriad health problems since he was born, including diaper rash and thrush, vomiting and choking episodes, a urinary tract infection (R.B.K.F. was later circumcised), cough and congestion, parainfluenza, croup, blood in the stool, difficulties eating/eating intolerance, poor weight gain and linear growth (which was flagged as "concerning for failure to thrive"), blueness to his lips and mottling at his hands and feet, swelling and discharge following his circumcision, adverse reactions to foods, and gastroesophageal reflux disease ("GERD"), among others. During the first three months of his life, R.B.K.F. was prescribed a number of antibiotics, and a doctor noted it was "concerning" that he had had "sever[al] viral, bacterial, and fungal infections since his birth." R. 9-9 (Med. R. 1 at 137, 139) (Page ID #654, 656).

R.B.K.F. has been diagnosed with hypogammaglobulinemia, pharyngeal dysphagia, and anemia, and is routinely evaluated for failure to thrive. His hypogammaglobulinemia and immunodeficiency "place[] him at risk for frequent and severe infections," according to his doctor, Dr. Benjamin Prince. R. 9-11 (Med. R. 3 at 228) (Page ID #1549). R.B.K.F. began receiving monthly intravenous immunoglobulin ("IVIG") injection therapy after being hospitalized with concerns for sepsis in October 2019. He continued to have issues with choking during eating, with bowel movements, and with immunodeficiency, but he also began to experience "excellent weight gain" at eight months old. R. 9-10 (Med. R. 2 at 145) (Page ID #1049); R. 9-11 (Med. R. 3 at 56)

2

(Page ID #1377) (stating that at eleven months, R.B.K.F. had "actually been gaining weight well"). When R.B.K.F. was nine months old, he had an episode in which he "fell forward" and his pupils would not dilate, although the medical reports state he was "alert and awake" when he arrived at the hospital, where he received a four-hour IVIG infusion. R. 9-10 (Med. R. 2 at 314) (Page ID #1218). By March 2020, R.B.K.F. had experienced "abnormal side effects" at all but one of his monthly IVIG infusions, which prompted a change to subcutaneous ("sub-Q") IVIG, which he had tolerated better. R. 9-11 (Med. R. 3 at 79–80) (Page ID #1400–01). He also began receiving the sub-Q IVIG therapy at home every two weeks, rather than monthly at the hospital.

In January 2020, R.B.K.F. was deemed eligible for Ohio Early Intervention due to his developmental delay. In R.B.K.F.'s evaluation, the assessment team determined that he "show[ed] occasional use of some age expected skills, but more of his . . . skills [were] not yet age expected in the area[s]" of developing positive social-emotional skills and acquiring and using knowledge and skills; and that he was not yet using the skills expected of his age in "using appropriate action to meet needs," although he had exhibited many of the "important and immediate foundational skills to build upon." R. 9-11 (Med. R. 3 at 237–39) (Page ID #1558–60). During this time period, he continued to gain weight well.

In April 2020, R.B.K.F.'s Disability Determination Explanation reported that he had "no limitation[s]" in "acquiring and using information," "attending and completing tasks," and "interacting and relating with others"; and "less than marked" limitations in "moving about and manipulating objects," "caring for [oneself]," and "health and physical well-being." R. 9-5 (Disability Determination Evaluation at 3–4) (Page ID #374–75). R.B.K.F. received the same results in his July 2020 Reconsideration for Disability Determination Explanation. In both

evaluations, the signing doctor and examiner noted R.B.K.F.'s weight gain toward a more appropriate body-mass index rate.

On October 22, 2020, Rachel Hall ("Hall"), a certified nurse practitioner, completed a Pediatric Primary Care Medical Statement, in which she checked a box stating that R.B.K.F.'s condition and required medical treatment were "at least of equal medical significance to that of an immune deficiency treated by stem cell transplantation," noting that he had "hypogammaglobulinemia, [GERD], pharyngeal dysphagia, and FTT (failure to thrive)" in supporting her statement. R. 9-12 (Med. R. 4 at 254–55) (Page ID #1852–53). About a month later, Dr. Michele Hensley, M.D. ("Hensley") similarly marked that R.B.K.F.'s condition was "at least of equal medical significance to that of an immune deficiency treated by stem cell transplantation," although Hensley checked that R.B.K.F. had "[m]arked limitation" in his health and physical well-being, *id.* at 271 (Page ID #1869), whereas Hall had selected "[e]xtreme limitation." *Id.* at 255 (Page ID #1853). Hensley noted that R.B.K.F. experienced frequent emergency room and urgent care visits due to his immunodeficiency, that he had responded well to treatment, and that his failure to thrive and aspiration issues had improved.

In November 2020, R.B.K.F.'s annual assessment for Ohio Early Intervention also reflected improvement, with R.B.K.F. "show[ing] many age expected skills, but continu[ing] to show some functioning that might be described like that of a slightly younger child" in "developing positive social-emotional skills" and "using appropriate action to meet needs"; and "show[ing] occasional use of some age expected skills" in "acquiring and using knowledge and skills." R. 9-14 (Med. R. 6 at 6–8) (Page ID #2078–80).

## B. Procedural Background

On November 14, 2019, a claim was filed on R.B.K.F.'s behalf for SSI payments. The SSA found that R.B.K.F. did not qualify for SSI payments, and informed R.B.K.F. of its decision on April 10, 2020. Upon a request for reconsideration, and after independent review, the SSA found the prior determination to be "proper," and again denied R.B.K.F.'s request for payments. R. 9-6 (Juris. Docs. at 12) (Page ID #396). R.B.K.F.'s representative then requested a hearing by an ALJ, which was held on March 16, 2021. The ALJ issued its decision on March 29, 2021, denying SSI benefits to R.B.K.F. An appeal to the district court was filed on R.B.K.F.'s behalf, on the grounds that there was not substantial evidence on the record to support the ALJ's findings. The district court affirmed the Commissioner's decision. *Samantha F. ex rel. R.B.K.F. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2368, 2023 WL 2154690 (S.D. Ohio Feb. 22, 2023).

## II. DISCUSSION

## A. Standard of Review

This court views the ALJ's findings as conclusive "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). When substantial evidence supports the Commissioner's decision, "it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). In reviewing the Commissioner's findings, we cannot "try the case de novo," resolve evidentiary

conflicts, or decide questions of credibility. *Walters*, 127 F.3d at 528 (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). We must look at the record "taken as a whole" when evaluating whether the ALJ's decision was supported by substantial evidence. *Garner*, 745 F.2d at 388. We review de novo the district court's decision regarding Social Security benefits. *Crum*, 921 F.2d at 644.

**B. The Commissioner's decision was supported by substantial evidence.**

When determining whether a minor is eligible for Social Security benefits, the Commissioner uses the Social Security regulation's three-step inquiry: (1) whether the child is engaged in "substantial gainful activity"; (2) if the child's impairment is "severe"; and (3) if the impairment "meet[s], medically equal[s], or functionally equal[s]" any in the Listing of Impairments. 20 C.F.R. § 416.924(a)–(d). If the child is not engaged in substantial gainful activity and has a severe impairment that falls within a listing, they are eligible for disability benefits. To determine whether a child's impairments are "functionally equal" to a listing, the regulations lay out six domains: (1) "[a]cquiring and using information"; (2) "[a]ttending and completing tasks"; (3) "[i]nteracting and relating with others"; (4) "[m]oving about and manipulating objects"; (5) "[c]aring for yourself"; and (6) "[h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)–(vi). Finding medical equivalence when a condition is not included in the Listing of Impairments requires the ALJ to compare the claimant's findings and "all evidence in [their] case record" with "those for closely analogous listed impairments." 20 C.F.R. § 416.926(b)–(e).

R.B.K.F. asserted eligibility under Listing 114.07, stem cell transplantation. 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 114.07. Although R.B.K.F. conceded that he did not "meet" this

(or any) listing, he claimed his impairment still medically or functionally equaled Listing 114.07. R. 9-4 (ALJ Dec. at 2–3) (Page ID #254–55); Appellant Br. 27. The Social Security guidebook describes stem cell transplantation in 114.00E3, which states that an individual will be considered disabled for "at least 12 months from the date of the transplant," after which the SSA will consider any residuals of the immune deficiency disorder and "any residual impairment(s) resulting from the treatment," such as complications from graft-versus-host disease, immunosuppressant therapy (like frequent infections), and significant deterioration of other organ systems. 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 114.00E3. The ALJ found that R.B.K.F. satisfied steps (1) and (2) of the SSA's three-step inquiry, because he did not engage in substantial gainful activity, and his "failure to thrive, anemia, immunity deficiency, and Pharyngeal dysphagea [sic]" constituted severe impairments. R. 9-4 (ALJ Dec. at 2) (Page ID #254). However, it found that, because R.B.K.F.'s impairments did not meet any in the Listing of Impairments, nor was his condition medically or functionally equal to Listing 114.07, he was not entitled to SSI payments. *Id.*

On appeal, R.B.K.F. does not challenge the ALJ's findings that his impairment lacked functional equivalence to Listing 114.07, but he claims that the ALJ failed adequately to consider whether his condition was medically equal to stem cell transplantation, which "significantly prejudiced" his claim, and that the district court erred in affirming the ALJ's decision. Appellant Br. at 27–29, 31. Specifically, he claims the ALJ erroneously discounted the medical opinions of Hall (a certified nurse practitioner) and Hensley (an M.D.), both of whom checked that R.B.K.F.'s condition was "at least of equal medical significance to . . . immune deficienc[ies] treated by stem cell transplantation" on Primary Care Medical Statements they filled out in late 2020, particularly given R.B.K.F.'s extensive medical record. *Id.* at 28, 31–35. In its response, the Commissioner

7

states that according to current Social Security Ruling ("SSR") 17-2p, at the hearings or Appeals Council stage, if the

> adjudicator . . . believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.

Appellee Br. at 23 (quoting SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017)). In this context, "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). In his reply brief, R.B.K.F. claims that the Commissioner's discussion of SSR 17-2p in its brief is an attempt at post-hoc rationalization, which cannot be used now to affirm the ALJ's decision on appeal. Appellant Reply Br. at 9.

Agency actions "must be upheld . . . on the basis articulated by the agency itself," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983), "and not based on 'appellate counsel's post hoc rationalization[s].'" *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) (quoting *Comcast Cablevision-Taylor v. NLRB*, 232 F.3d 490, 497 (6th Cir. 2000)). "[A]n agency must 'articulate a satisfactory explanation for its action.'" *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)).

In its decision, the ALJ did not explicitly discuss or invoke SSR 17-2p, although the ruling was in place at the time R.B.K.F. filed his claim. SSR 17-2p rescinded and replaced the previous SSR, SSR 96-6p, in March 2017. SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). The ALJ followed the SSR's dictates, even if not invoking the ruling by name, and discussed which evidence in the record it found persuasive and which it did not, including the two opinions by

medical professionals that R.B.K.F. relies on in his appeal. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 834 (6th Cir. 2006). The Commissioner here did not attempt to introduce evidence or reasoning that was not discussed in the ALJ's initial decision-making. Rather, it was pointing to an SSR that the ALJ was bound to follow in reaching a decision about R.B.K.F.'s Social Security benefits. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations."); *McClanahan*, 474 F.3d at 834. This does not constitute an impermissible post-hoc rationalization for the ALJ's decision. The ALJ was not required specifically to state, under SSR 17-2p, why it did not find Hall's and Hensley's forms convincing. The ALJ's explanation that it found unpersuasive Hall and Hensley checking the box without "provid[ing] any reasoning or support for [their] statement[s]," read against the record as a whole, was sufficient under SSR 17-2p. R. 9-4 (ALJ Dec. at 6) (Page ID #258).

Even if the Commissioner's reliance on SSR 17-2p were a post-hoc rationalization, though, we could overturn the ALJ's decision only if the error was not harmless and would have impacted its determination. *See, e.g.*, *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). The ALJ discussed, and found unconvincing, the fact that two medical professionals (Hall and Hensley) had marked on preliminary intake forms that R.B.K.F.'s condition was medically "equal to" stem cell transplantation, because neither of them provided any rationale for this designation, and because the ALJ did not believe that this conclusion aligned with what else it saw in R.B.K.F.'s record. R. 9-4 (ALJ Dec. at 5–6) (Page ID #257–58). Instead, the ALJ found persuasive the fact that state agency consultants had thought R.B.K.F. had "no limitation" in the first three child disability domains, and "less than marked" in the last three; that R.B.K.F.'s medical charts

demonstrated that despite his early failure to thrive and low weight gain, he was later showing general improvement; and that while hypogammaglobulinemia placed him at a higher risk of infections, R.B.K.F. did not experience any serious infections. R. 9-4 (ALJ Dec. at 5–6) (Page ID #257–58).

R.B.K.F. argues on appeal that Hall's and Hensley's opinions should have been given greater weight, particularly given R.B.K.F.'s extensive medical record documenting numerous hospital visits, infections, and health problems. We do not discount the suffering that R.B.K.F. has experienced in his short life. However, the ALJ must consider the entire record. In the context of medical records that note improved growth and weight gain, which even Hensley's form reflected, as well as other opinions that indicated R.B.K.F. had no or few limitations, the ALJ was permitted to find that the medical opinions offered by Hall and Hensley were insufficient to establish medical equivalence to stem cell transplantation. The ALJ explained that against the backdrop of these other records showing R.B.K.F.'s improvement, it was not persuaded by these two forms that offered little to no rationale as to why they each had checked the box indicating that R.B.K.F.'s condition was equal to stem cell transplantation. A review of the forms shows that Hall's rationale recited R.B.K.F.'s various diagnoses, and stated that he is "frequently ill" and had appointments "several times a year"; and Hensley's noted R.B.K.F.'s frequent urgent care and emergency room trips due to his immunodeficiency, but also mentioned that his failure to thrive and aspiration issues have improved. R. 9-12 (Med. R. 4 at 255, 271) (Page ID #1853, 1869). Neither Hall nor Hensley indicated that R.B.K.F.'s condition has reached the severity of the conditions that 114.00E3 lists, like a need for immunosuppressant therapy or significant deterioration of his other organ systems. Reading these opinions as part of a medical record that

shows R.B.K.F. has experienced overall medical improvement, and that other professionals have not reached similar conclusions, substantial evidence supports the ALJ's conclusion that R.B.K.F.'s condition was not medically equivalent to stem cell transplantation. *Cf. Walters*, 127 F.3d at 528.

Given that we are bound on the record to uphold the ALJ's decision under the substantial-evidence standard, we affirm the denial of benefits. Upon a review of the record as a whole, the ALJ found unconvincing medical records summarily stating that R.B.K.F.'s condition was equal to stem cell transplantation and relied on opinions that it ultimately found more persuasive. Substantial evidence supports the ALJ's determination that R.B.K.F. does not qualify for SSI benefits.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.